Huitín, Chief-Justice
 

 The point principally argued in this case, is made upon the instruction of the judge who tried the cause, that the jury might presume a grant to the defendants ancestor.
 

 The case upon which the instruction was given appears in the record to be this.
 
 Robert Mabe
 
 about the year 1763, settled on the land in dispute, which was then vacant and wild. He built houses, and opened a considerable plantation on it. After some time he removed to another place in the immediate neighborhood ; and then back to his former habitation; since which time, ho or his children, have continually occupied this land. The precise periods of those respective remováis are not stated; which is to be regretted, as it is embarrassing to decide a question of this kind, upon general allegations. But it was certainly anterior to 1794, that
 
 Mabe
 
 went back, and probably several years before; because there is no evidence that any body else ever occupied, and at that time the plantation which he had in cultivation was an old one, and appeared to have been cultivated many years, Indeed it is to be inferred from other parts of the case, that he had returned, and was in actual possession in 177 b, and had been for seven years. In 1778 he made an entry of tfie land, to which
 
 Alexander Martin
 
 put in a caveat; which he withdrew in May, 1779. A grant to
 
 Rogers
 
 issued in 1795, ■which covers part of the land claimed by
 
 Mabe,
 
 
 *186
 
 and purports to be founded on an entry made by
 
 Jl.
 
 Martin, and assigned to
 
 Rogers.
 
 The date of
 
 .Martin,g
 
 entl.y> or 0f the assignment of it is not given; nor are the grounds of his caveat stated.
 

 On the part of the plaintiff there was evidence, that prior to 1810, (but when does not appear,')
 
 Martin
 
 promised
 
 Mabe,
 
 that he should nor be disturbed during his life; and that subsequently
 
 Mabe
 
 asked a witness, whether he remembered it, assigning as a reason for wishing to know, that one of the lessors of the plaintiff threatened to sue him for the land;
 

 The court instructed the jury, that if
 
 Mabe
 
 and his heirs had been 4Ó or 50 years in peaceable possession, claiming and using the land as' their own, the jury . might, if they thought proper, presume a grant to have' issued on the entry made by
 
 Mabe,
 
 and
 
 that if they
 
 found it to have issued before the 5th of November, 1795, (the date of the grant
 
 t(rRogers, J
 
 they ought to find for the defendant.
 

 It is contended for the plaintiff, that the ‘judge erred in thus leaving the case to the jury; first, because there . Was not sufficient in the evidence to authorise the presumption, that a grant had in fact issued; secondly, that the judge did not qualify his instruction by any. reference to the transactions with
 
 Alexander Marlin;
 
 and.thirdly, that the jury should have been told, that they could not act on the presumption of a grant, unless they were satisfied, that it was in fact made.
 

 The. objection has been argued as if tlie court had directed the jury, that they ought to make the presumption. But that is neither the tenor iaor the meaning of the direction. Upon its face, it leaves the question, as being purely one of fact, to the jury. They were informed, that they might presume the grant, if they thought proper; which is an instruction, to find according to their belief of the truth of the case. The court did not state the effect of the'circumstances, if found by the'jury'to.exist, as grounds of presumption; but left those circumstances themselves, if established to their satisfaction, as evidence to the jury,, upon which they
 
 *187
 
 were to make their own inferences of fact, according to the intrinsic weight, to which, as circumstantial' proof, they might, in their judgment be entitled. Substantially the court only said, that if the jury presumed, from the possession of the kind supposed, a grant to
 
 Male,
 
 tli.ey might find for the defendant, although the grant was not produced on the trial, nor the loss of it accounted for. Upon the charge, the verdict must therefore be considered as finding, the very fact.. If that be upon insufficient evidence, this court cannot correct it; for that was-thc fault, not of the judge, but of the .jury, unless there, was no evidence upon which the presumption of the fact-could arise. That has npt been, and could not contended. The evidence certainly tend-ed to establish
 
 the'fact.
 

 If the court
 
 did not give a wrong construction in point of law, the omission in the summing up, to draw the attention of the jury specifically to a particular circumstance, as a part of the evidence, is not an error for • which the judgment can be reversed. If a more-particular notice of it was material to the party, he ought to have prayed it. But the judge did substantially comply with the requisitions of the plaintiff. He stated to the ju-' ry, that the possession,, to be a ground of presumption with them, must be found by them, to be quiet and peaceable, and on a claim and use'of the land as the party’s own;, which directly presented the enquiry, whether the possession was adverse or was derived under
 
 Martin’s
 
 title, as an'antecedent one. In this view of the case, there is no.ground of complain thy the plaintiff"; because the improper inferences of the jury are nqt the subjects of review .here; and also because the judge left the case to the jury, much less favorably for the defendant, than it' seems to us, be might have done.
 

 It would perhaps be sufficient if the court were upon this point to leave the case here, But as. there is to be a new tidal upon another ground, and the jury might not draw'again the same conclusion of fact, it is deemed proper to terminate this litigation, as far as the expression of our. opinion upon the nature and effect of
 
 *188
 
 f,)te presumption upon this evidence, will liave that effect.
 

 The doctrine of presumptions Rmndationstated!
 

 that ^1’8 11 °t a case in which the jury gj}0Uj(j j)avo jjeen †0](]? that they might presume a grant as founded upon their belief that it issued ; but should have been told, that they ought to presume it, unless from the other evidence they were satisfied that a grant did not issue.
 

 In this State, time does not as yet constitute a title, which can be stated in pleading, to be such by prescription, unless it be of that peculiar kind created by statutes limiting actions or rights. In all other cases it is evidence. But its weight is different according to circumstances. Long possession is naturally evidence
 
 per sc,
 
 that it is adverse to the rest of the world, and on a claim of right, and by consequence is pregnant proof of the right. A right thus shown is prescriptive in its na--ture. But as the common law recognises but one manner of prescription, and within, that no case falls unless the right has been enjoyed beyond the memory of man, it has, since that idea of prescription was adopted, been found necessary and absolutely necessary, to allow to long possession, though within memory, a force and effect
 
 proprio vigore,
 
 by which certain inferences of fact are considered to be established upon a general principle, without Waiting for those who ordinarily try facts, to announce that they really make that deduction of fact, from the possession as evidence of it. The rule has been so long acted on that it is now settled. The court does not act upon the presumption as conclusive, but as being the next thing to it. The jury is directed that they ought to consider the fact that may be presumed, as existing unless the contrary be proved. The rule is founded partly upon the supposition that one man will not usurp the rights of another; and if he should, that the other will become cognizant of it, and seek to resume them, and ought to do so before the usurper has expended his substance, and employed his life in improving an estate which is to be taken from him. But it chiefly rests upon the consciousness of all human tribunals, of the imperfections and inadequacy of their capacity for '
 
 *189
 
 the investigation of remote transactions ; touching which satisfactory conclusions can seldom be arrived at, as being the real truth. Of the proofs, many even of those in writing, will in the ordinary course of events be lost. — ■ Of the w itncsses, most must be dead ; and of the survivors the relation is not received with confidence; for it has not the ordinary claims to crddence. It is given, when from the decay of the faculties, the most upright man may deceive himself as to his recollection; and one without integrity may safely deceive others, because there is none to contradict him. Public policy forbids all enquiry into such transactions ; if upon the enquiry, rights are to be adjudged only as they are shown by affirmative proof to exist. Hence the necessity for presumption
 
 ;
 
 and to derive utility from it, any thing and every thing is presumed in favor of him who has had a long possession and exclusive enjoyment, and against him who seeks to disturb it; and this as a matter of right reason and moral certainty.
 

 In
 
 Reed
 
 v.
 
 Brookman,
 
 (8
 
 T R
 
 159,) Mr.
 
 Justice Bull-' er
 
 said, that for two hundred years past it had been considered that grants, letters patent, and even records should be presumed from mere length of time. An instance of presumption from time is familiar to every student* upon the issue of payment at or after the day, in debt-on a bond. There are many cases, and the more numerous as we come down to our own times, in which the doctrine has been discussed and applied to the rights of property, both incorporeal and corporeal, at law and in equity. Examples are the bars of twenty years in suits for foreclosure or redemption of a mortgage; which, to be sure, is said to be in analogy to the statute of limitations. But the period is not fixed by law,- and in all cases, as was said in
 
 Ricard
 
 v.
 
 Williams, (7 Wheat
 
 109,) the period deerded sufficient to raise the presumption in cases to which the statute does not apply is that fixed by the statute in cases of the like kind to which it does apply. It is manifest that the rule is nugatory, unless the necessity which calls for it, authorises the courts, in proper cases, to lay i,t down, and the jury to respect it as
 
 *190
 
 a rule of the law. In the cases just adverted • to, it lias been so adopted. It is applied as a .professional presumption to an existing, controversy, as one of a class of cases, rather than given in as circumstantial evidence-to the jury of the actual fact in each case. In
 
 Elbridge
 
 v.
 
 Knott, (Cowp.
 
 215,)
 
 Lord Mansfield
 
 not only said that a grant might be presumed from great length óf possession, but that in many cases the court had told the jury, they should presume it, or any thing, to support a long possession and this not upon the idea that the jury believes, or .that the court thinks that they ought in the particular case to believe, that a grant had been made; for it is not probable that it was made; but the fact is' presumed from the principle of quieting possessions.— And in a case before Lord
 
 Erskine,
 
 in which-lie treats on the effect of time, he declared that he did not act on it as raising a direct presumption of • the fact from it, as evidence of the fact; but took the
 
 presumption,
 
 that might be made, for the fact, not because it proved the fact but because the fact could not be proved. The weight of evidence is estimated then, not by its influence over.the minds of the jury, but- by a rule which has become a part of the law ef evidence.
 

 It is well established in England. In this country it is not so familia?, and especially in this State. Our origin is so recent, that there has been seldom an occasion calling f-iv the application of the doctrine, more especially as the sales of land here are so frequent, that almost every possession is clothed with a deed, w.liicli renders a possession of seven years a conclusive bar against individuals,- or one of twenty-one, against the State. But we are not without cases upon this subject. Several were cited-at the bar from the-courts of Ñew-York, and that
 
 of Ricard
 
 v.
 
 Williams (7 Wheat.
 
 59,)
 
 Pipkin
 
 v.
 
 Wynns, (ante
 
 2
 
 vol. p.
 
 402,) recognizes it in this State, and adopts the rule as that of the law. At this term in the case of
 
 Wilson
 
 v.
 
 Wilson, (ante p.
 
 154,) this court approved of. a direction • from the court to the jury, to presume a grant of an easement from a possession of twenty-years or more-. The. act of 182b (c. 28,) is a legisla-
 
 *191
 
 live authority, that these are legal presumptions, and to he regarded with favor. That act treats some of the established presumptions from time, as rules, and proper
 
 ■
 
 rules of
 
 law;
 
 and, without rendering them more concilia sive in their nature, strengthens their operation by shortening the time necessary to raise them. I do not perceive a difference between corporeal and incorporeal • things in this respect.' But it. has never been considered here, that the short period prescribed by our statute of limitations, was sufficient
 
 per se,
 
 to raise the presumption; for there can seldom he .a difficulty in. giving evidence,' either director bearingcvitli ordinary certainty,on events occurring within 'seven or eight years.' Twenty'years seems to be a reasonable-time, and as short as should be taken as the basis of the presumption against iridividu-.als ; but I think that ought to be sufficient, and without saying wh'at period exceeding twenty-one years, riot accompanied by color-of title, might.raise it against the State, certainly the length'of possession in this case,must be sufficient if any be. Upon the instruction given, it must be assumed that the apparent chasms' in the occupation •were satisfactorily filled up to the jury, and. the periods of • the removal of Mabe.so explained, as to leave a clear and. continued occupation of upwards of forty years, and plain and consistent proof relating to so remote a transaction is not
 
 to
 
 be expected. But from the dates given, if seems to have been for sixty-three years, . with the exception of the one interval of his removal.' In such a case the presumption ought to stand unless it •be clearly rebutted. The court leans to the presumption, and requires the evidence offered to repel it, to show the fact to be.otherwise. There is much to strengthen, it in the other facts. The land was vacant'when
 
 Mabe
 
 settled on it. He entered it, and the purchase money was . then payable-to the .entry.taker. Apparently then-he was entitled to a grant, and entitled to it not only as •against the State, but also in preference to all other persons. None contested it but Martin, and the ground of his
 
 caveat
 
 does not appear! But to take it most strongly. for the plaintiff, it ipiist be supposed, as -no-actual pos--
 
 *192
 
 session is shown in
 
 Martin,
 
 that it was founded in a for-me). 01)^,,y ju
 
 /j0r(i Granville’s
 
 office, or a prior one in t|10 state’s office, under the provisions of the entry law 0f 1777 ; which did not determine which amongst these several classes of claimants should be prefered. But the act of 1779, which passed in January of that year, provided that the preference should be given to the settler. who had been in possession for seven years, of land within the entry of another. The retracting of the
 
 caveat
 
 immediately after the passage of the act is evidence of the recognition by
 
 Martin,
 
 of the superior right of
 
 Male,
 
 as founded on a prior and adequate possession.
 
 Make
 
 then entered under the State and not under
 
 Martin,
 
 held not merely by the acquiescence of
 
 Marlin,
 
 but against him, and against his will.
 

 If indeed
 
 Male’s
 
 entry had been upon
 
 Martin’s title, or
 
 upon a right in himself consistent with the title of
 
 Marlin,
 
 as an antecedent one, and
 
 that no vr
 
 asserted by the plaintiff adversely to
 
 Male
 
 be the title of
 
 Martin,
 
 there, would be nothing in the case on which the court could say there was a presumption of a conveyance from
 
 Martin
 
 or
 
 Rogers
 
 to
 
 Male.
 
 In a case of that kind an actual conveyance must be shown, or presumed by the
 
 jury;
 
 and there ought to be evidence that at some time the possession became adverse, and was thereafter so long continued, as to induce the actual belief that there was a subsequent deed. Such was the case of
 
 Doe ex dem. Fenwick
 
 v.
 
 Reed,
 
 (7
 
 E. C. L. R.
 
 79,) cited for the plaintiff. The defendant claimed by assignment from a creditor of the former owner, who entered into possession under an agreement with the debtor-, that he should hold the land until his debt was paid. The title deeds were retained by the former owner, and the agreement proved and the family of the debtor had, upwards of thirty years after the agreement, paid ecclesiastical dues which exonerated from tytlies the land in the hands of the occupier. The origin of the possession was unequivocally upon the title then vested in the plaintiff, and for a. particular estate, and that possession could not be set up as a presumption that a conveyance had been subse
 
 *193
 
 quently made in fee, without showing some fact that would make it adverse a great while before, and also a continuance of it, after that, for such a length of time as would induce the jury to believe that a conveyance had been actually made, which belief was the more difficult in that case, because the necessary conveyance to pass the fee was a fine, of which every memorial was not likely to be lost.
 

 But in this case the origin of the possession was entirely
 
 different
 
 — not connected at all with
 
 Martin’s
 
 title and
 
 held
 
 against it. in such a case, even if the transaction with
 
 Martin
 
 was before his assignment to
 
 Rogers,
 
 it would be difficult to allow any operation to it, unless it was proved in such terms as would clearly give it the character of an attornment, which seems altogether incredible as being entirely inconsistent with the contest on the
 
 caveat,
 
 and the result of that proceeding. It would rather seem that what is called the promise of
 
 Martin
 
 was the vaunt of a vanquished man, who did not like to acknowledge the victory of his adversary, than the ac-knowledgement of
 
 Male
 
 that his title was inferior to his adversary’s. If however the period of the transaction had been fixed and the jury could infer from it, notwithstanding the evidence of record, that
 
 Male
 
 clearly recognized
 
 Martin’s
 
 title and therefore took no steps to complete Iiis own, then it would have been a question of fact for the jury, whether a grant had subsequently actually issued to
 
 Male,
 
 or whether
 
 Martin
 
 or
 
 Rogers
 
 had conveyed to him. But the plaintiff in the case made by him could not ask benefit from that principle, because it does not appear that the promise of
 
 Martin
 
 was made prior to his assignment, or had any connection with the title now vested in the lessor of the plaintiff. For the want of that there was nothing to repel the presumption, and it ought to have been laid down to the jury unqual-ifiedly as producing a legal inference, that a grant had issued to
 
 Male
 
 on his entry made in 1778, or on some other. It is the opinion of the court therefore, that in the instruction given, there was no error as against the plaintiff.
 

 
 *194
 
 Construction of tlie calls in the ffrant.
 

 This opinion would render it unnecessary to consider the exception to the charge of the Judge upon the question of boundary ; because the jury did not find their verdict upon that part of the ease, as appears from the verdict being generally for the defendant, although the patent to
 
 Sogers,
 
 under any construction of it, covers a part of the land claimed by the defendant. But as there is to be a new trial upon another point, it may be our duty to decide this point also, for the purpose of narrowing the controversy upon the next trial.
 

 We have no difficulty upon the construction of the patent, and must say that our opinion does not concur with that of the Judge of the Superior Court. If the call of the grant bo for the river, it is a settled rule that the river is the boundary. The words are “ thence west up the river 220 poles to a stake,” which the Judge considered uncertain, and therefore left it to the jury to presume that a line was actually run according to the course ; and in substance, instructed them that such line, if found by them to have been run, was the boundary. There was nothing shown here as marked trees on the line, or at the corner, to control the calls of the deed, nothing but a stake being called for. The course and distance therefore, upon legal principles must govern, if there bono call for another object, and so the jury
 
 should
 
 have been instructed. But if there be a call for the river, upon the like principle, the instruction should have been that the deed extended to the river. The court considers it settled upon authority, that “ up the river” is the same as “ along the river,” unless there be something else besides course and distance to control it. In
 
 Hartsfield
 
 v.
 
 Westbrook,
 
 (1
 
 Hay.
 
 258,) “ thence down the swamp,” was held to mean “ along the swamp.” In that case no course was given, and for that reason, the argument was that a direct
 
 line
 
 from the corners called for in the deed was the boundary, but it was held otherwise. But in
 
 Smith
 
 v.
 
 Auldridge,
 
 (2
 
 Hay.
 
 382,) the decryption was ‘thence, south 50 degrees east down the creek to a white oak,” and the question was whether the creek or a straight line from the white oak to the preceding corner was the
 
 *195
 
 boundary, and it was held the former. We believe that these cases have since governed many others. These words might possibly be controlled
 
 by a call
 
 in the grant for a line of marked trees, or a visible and permanent marked corner, as a stone or a tree, found and identified, and not standing on the river ; as that might show that they were used only to denote the general direction of the line, subject to the restriction rendered necessary by the specific call for oilier permanent
 
 termini
 
 found to be
 
 up,
 
 but not
 
 on
 
 the ri ver. Upon the face of the deed, and state of the evidence, the river is the boundary by the judicial exposition ; and the Superior Court erred, as we think, in not giving it to the jury.
 

 Color of title depends not on. the purpose, of taking a deed but on its apparently conferring an estate on the pop-sessor of land.
 

 A further exception is taken to the opinion of the court upon the operation of the deeds from the Sheriff to
 
 Gibson,
 
 and- from the latter to
 
 Mabe.
 
 It is contended that they do not constitute color of title ; because there was no change of possession, ami because they were taken in fraud of
 
 Martin,
 
 under whom
 
 Mabe
 
 held.
 

 Those deeds it is true, could not change the character of the possession, as between landlord and tenant. But that is a very different question from the present, which is, whether they exhibit a colorable title, so that if the possession was adverse, they would denote that the possessor had some estate on which his possession was grounded and not a mere naked possession. If one in possession take a deed in fee, from another who has no right, that is a colorable title, which apparently au-thorises the subsequent possession. If indeed he was the tenant of another,; the deed would not
 
 per se,
 
 as between them, operate as an ouster of the landlord, or make the possession of the tenant adverse. Still there would be a color of right. But this is not a mere continuance to get a proper title
 
 ;
 
 at least the court is not at liberty to consider it so upon the facts stated. It may be argued, that as no money was paid by
 
 Gibson,
 
 the debt for which the sale was made was not a true one— But that is not stated to be the fact: and it may well be that it was and that
 
 Gibson,
 
 purchased as the friend of
 
 Mabe
 
 to give him time to raise the money, and that he
 
 *196
 
 ¿id raise it himself and satisfy the creditor. That would rebut every imputation of fraud, and the deed would then be a plain declaration to the world that he claimed the fee< The Superior Court held that the Sheriff’s sale was color of title only from the execution of the deed. To that extent at least we think it must be carried— Whether the deed when made, did not by relation constitute color from the sale, as it constitutes title from that time so as to overreach, an assignment of dower subsequent to the sale, is a question
 
 upon the
 
 affirmative of which much might be said. Connecting the deed, the execution, sale and return of the sheriff together, they would seem at least as plausible documents of title, as those enumerated in the first section of the act of 3 715, and that of 1791, from which we get our ideas of color. But the case does not call for a decision of the question, and therefore it is left to be further considered.
 

 Compotoncy of one tenant, in neaTfor biseco-tenant,
 

 We think the deeds are color of title. It results from this opinion, that all the lessors of the plaintiff, except the infant, are barred by the statute of
 
 limitations;
 
 and upon the authority of
 
 Hoyle v. Stowe, (ante
 
 2 vol.p. 318,) as there is but one count, upon a joint demise, the plaintiff could not have judgment for even the infant’s share. It appears however in the record, that the plaintiff obtain-e(^ ^eave amen(i the declaration upon payment of costs, and we presume it was in this
 
 respect;
 
 which prevents ^10 coul't from affirming the judgment on this ground,
 

 The only remaining exception is to the admission of the witness
 
 Shelton.
 
 The point to which he was examined is not stated, and therefore there must be a new trial if he was incompetent for any purpose. We think he was incompetent. He married a co-heiress with the defendant, who claims the .land, and is in possession as heir of their father. There has been no partition, and the wife is not stated to be dead, and is therefore taken to be living. The witness and the defendant are then tenants in common, and the latter is the tenant in possession, and the plaintiff claims the whole land against both.— The ground upon which the Judge admitted the witness is, that he was not a party to the suit. But there arc
 
 *197
 
 many cases in which persons not parties in ejectment, are not competent witnesses. He who is bound in a .warranty to one of the parties cannot be a witness in sujiport of the title he is to make good. Nor can a land - lord testify for his tenant. Nor we think, one tenant in common for another. They are all interested in the event of the suit, and not barely in the question. The possession of the defendant is
 
 prima facie
 
 that of the witness, and the recovery in the action would change the possession, and
 
 put
 
 out the person upon whom the witness has a right to call for an account as his bailiff. For this reason and for this alone, we think the judgment must be reversed and a new trial granted.
 

 Per Curiam — Judgment reversed.