[Discussion of the Doctrine of Color of Title, by AVERY, J.]
The findings of fact, conclusions of law, and judgment were as follows:
On the 18th day of January, 1848, Nicholas W. Arrington, being the owner in fee of the real estate described in the complaint, signed and delivered unto Elizabeth F. Wright, his daughter, and the then wife of W. T. Wright, the paper-writing, a copy whereof is as follows:
"This indenture and deed of gift, made this 18th day of January, one thousand eight hundred and forty-eight, between Nicholas W. Arrington, of the county of Nash and State of North Carolina, of the one part, and Elizabeth F. Wright, of the county and State aforesaid, of the other part —
"Witnesseth, That, for and in consideration of the love I have for my daughter Elizabeth F. Wright, I have this day given, granted, aliened and delivered to the said Elizabeth F. Wright one tract of land adjoining the lands of Wm. T. Wright, myself and others, and bounded as follows (describing it), which said tract of land I value and (379) assess to my daughter Elizabeth F. at the sum of twelve hundred and fifty dollars, without interest, and also the following negro slaves, viz., Selah, aged about forty-five; Chaney, aged about sixteen; Angeline, aged about fourteen; Rose, aged about twelve; Thomas, about ten; Anthony, about eight; Milly, about five; and Charity, about eighteen months, which said negro slaves I also give to my daughter Elizabeth F. Wright, them and their increase from this day forward, and to be received by her as likely only assessing the eight negroes without interest *Page 308 
or increase as here described, and the same rates or price as my other negroes may be valued and assessed to my other children, in case or provided I should die intestate; and I furthermore give, grant and deliver to her, my daughter Elizabeth F. Wright, and Wm. T. Wright, her husband, all the other property heretofore delivered to them, consisting of furniture, stock, provisions, c., which I here assess at the sum of four hundred dollars, which is to carry on interest, and which said money, land and negroes I give to her, my daughter Elizabeth F., her heirs, assigns, forever, as a part of her proportionable part of what I may or hereafter be able to give my children.
"In evidence of which, I herewith set my hand.
"NICHOLAS W. ARRINGTON."
There is no seal attached to or following the signature of the said N.W. Arrington, nor is any seal to be found upon any part of said paper-writing. This fact is found by an inspection of the original document or paper-writing, there being no other testimony offered in respect thereto. The plaintiffs contended, as a matter of law, that a seal was to be found upon said paper-writing. To the end that the question may be presented to the Supreme Court for review, the Clerk is instructed, if the plaintiffs so desire, to send with the (380) transcript the original paper-writing, or a photographic copy thereof. Upon the delivery of the said paper-writing, the said Elizabeth F. Wright, together with her said husband, entered upon and remained in the possession of the land therein described until the execution of the deed hereinafter set forth, to-wit, November 16th, 1857.
Said paper-writing was admitted to probate and registered in the county of Nash on the 29th day of December, 1885.
On the 16th day of November, 1857, W. T. Wright, the husband of the said Elizabeth, executed and delivered unto John F. Speight the deed, a copy whereof is as follows (the land described in the complaint and the said paper-writing is enclosed within the boundaries described in the said deed):
"This indenture, made this the 16th day of November, one thousand eight hundred and fifty-seven, William T. Wright, of the county of Nash and State of North Carolina, of the one part, and John F. Speight, of the county of Edgecombe and State aforesaid, of the other part —
"Witnesseth: That for the consideration of four thousand five hundred dollars, to him, the said William T. Wright, in hand paid by the said John F. Speight, hath this day bargained, sold and delivered to the said John F. Speight, one tract of land, and known as my residence in said county of Nash, adjoining the lands of N.W. Arrington, A. H. *Page 309 
Arrington and others, and bounded as follows, to-wit (describing it): To have and to hold the same, with all the privileges, advantages, appurtenances thereunto belonging, to him, the said John F. Speight, his heirs, assigns, c., forever, against the claims of all other persons whatever; and in evidence of which I do for myself, heirs, assigns, warrant and defend the same, the day and date before written.
"WM. T. WRIGHT.' [Seal.]
"And signed and acknowledged in the presence of —
Witnesses: N.M. HARRIS and JOHN G. ARRINGTON."
At the time of the execution of the said deed by W. T. Wright, N.W. Arrington wrote and signed an endorsement thereon in the (381) following words, to-wit:
"N. B. — Whereas, a portion of the above tract was presented by me to the said William T. Wright and Elizabeth, his wife, I do therefore now, for myself, and also for my daughter Elizabeth, relinquish, deliver, warrant and defend her interest in said land in compliance and according to the above said deed, and in evidence of which I have hereunto set my hand,c., the day and date above written.
"NICHOLAS W. ARRINGTON." [Seal.]
"And assigned in the presence of —
Witnesses: N.M. HARRIS and JOHN G. ARRINGTON."
This deed was admitted to registration March....., 1861.
John F. Speight paid a full and valuable consideration for the said land and went into possession thereof upon the delivery of said deed, and he, and those claiming under him, including the defendants (except those who disclaim in the answer), have remained in possession thereof until the commencement of this action.
The defendants (except those disclaiming) claim and are entitled to all of the interest and estate in said land which may have passed to or vested in the said John F. Speight, by virtue of the aforesaid deed from W. T. Wright to him, or the endorsement thereon by said N.W. Arrington. The said defendants also claimed and are entitled to and interest which may have accrued to the said John F. Speight or his assignees by lapse of time or otherwise.
Prior to his death, the said Nicholas W. Arrington made and published his last will and testament, the third item whereof is in the following words, to-wit: "I will and direct my two tracts of land east of said road, the one known as the `Harper place' and the other known as the `Doles place,' in front of Daniel Sumner's, (382) *Page 310 
containing about one hundred and thirty-five acres each, to be sold, at my death, by my hereinafter-named executors, and the annual interest arising therefrom to be applied to the wants and comfort of my unfortunate son, Nicholas W. Arrington, during his natural life."
The above mentioned land is a part of the land described in the paper-writing executed by said N.W. Arrington to said Elizabeth Wright, which he had purchased from the grantees of said John F. Speight.
The sixth item of said will is in the following words, to-wit:
"I will and direct that no part of my estate, real or personal, go to my daughter Elizabeth and her husband, W. T. Wright, for cause, that I have done by past gifts equal justice with my other children."
W. T. Wright died August 25th, 1886, his wife Elizabeth having died during the year 1872, leaving the plaintiffs, her children and heirs at law. The defendants all disclaim except W. W. Arrington and B. L. Arrington. Neither claim or have any interest in the said land.
The Court, upon the foregoing facts, being of the opinion, "that the legal title to said land in controversy did not pass to, or vest in, the said Elizabeth Wright by virtue of the paper-writing set forth, the same not being under seal, but that she acquired an equitable estate in fee in said land; that said paper-writing operated in equity as a covenant to convey said land, and, as such, was supported by a meritorious consideration.
"That John F. Speight acquired no interest, title or estate in said land by virtue of the deed from W. T. Wright, or the endorsement thereon by N.W. Arrington, as against the said Elizabeth F. Wright. "That upon the death of said Elizabeth F. Wright, the (383) equitable title descended to her heirs at law, the plaintiffs, subject to the life estate of said W. T. Wright, as tenant by the courtesy, and his interest vested in the defendants by way of estoppel.
"That upon the death of said W. T. Wright, the right to the possession of the said land descended to the plaintiffs. That they are not bound by the statute of limitations, nor is there any presumption of an abandonment of their rights or equities. That the certificate of probate on said paper-writing is not sufficient to entitle it to registration, but the same being made a part of the answer, the question of its admissibility does not arise.
"It is thereupon adjudged that the plaintiffs recover of the defendants, except those who disclaim, the possession of the said land described in the complaint. That the question of rents and profits, and the amount for which each defendant is liable, be ascertained by the Clerk of this Court, who is hereby appointed a referee for that purpose; that plaintiffs have a writ of possession from the Clerk of this Court for the said land, and recover their costs in this behalf expended, except as *Page 311 
to the defendants who disclaim, to be taxed by the Clerk. That this cause be retained until the report in regard to the rents is confirmed," etc.
From the foregoing judgment the defendants, except those who disclaim, appealed to the Supreme Court.
The following errors are assigned by the defendants:
1. That they denied the execution of the alleged deed from N.W. Arrington to Elizabeth F. Wright, and also denied the title of the plaintiffs to the locus in quo, and that they, the said defendants, also pleaded matters in avoidance, and that it was error for the Court to disregard the denials, and adjudged that the answer admitted the execution of the instrument.
2. That the Court erred in finding, as a fact, that said (384) alleged deed was delivered to said Elizabeth F. Wright. The only evidence on this point was as follows: The paper-writing was introduced by the plaintiffs, but the defendants insisted that it was not validly and legally probated and recorded, and cannot, therefore, prove delivery. The Court did not pass upon or adjudge the validity of the certificate of probate, being of the opinion that by the pleadings, the only question presented was the right of the plaintiffs upon the paper-writing as set out in the pleadings. W. F. Howerton testified that this paper-writing was handed to him by W. T. Wright, in the fall of 1885, and that he agreed to recover the land for one-half of it, and that he afterwards had the instrument recorded. Other witnesses introduced by the plaintiffs testified that Elizabeth F. Wright and her husband were in possession of the land from 1848 until November, 1857, and that ever since then John T. Speight, and those claiming under him, had been in possession.
3. That his Honor erred in deciding that said paper-writing was admitted to probate and registration December 29, 1885. The defendants insisted that the probate is insufficient, and the registration unauthorized and void. The witness (John J. Drake) does not state by what means he had acquired a knowledge of the handwriting of the said N.W. Arrington, nor that he had, in any way, ever acquired such knowledge; nor even that said N.W. Arrington was dead at the time of the so-called probate. No other registration of the instrument being proven, the defendants insisted that, as against them, it was null and void, under chapter 147, Acts 1885.
4. That his Honor erred in deciding that said Elizabeth F. Wright, by virtue of said paper-writing, acquired an equitable estate in fee in said land, and that said paper-writing operated in equity as a covenant to convey. The defendants insisted that even if said paper-writing was delivered to said Elizabeth F. Wright, she had (385) *Page 312 
under it, as against N.W. Arrington, only an equity for specific performance, or to compel a correction of the instrument, and the re-execution of the same in a proper form, and that this equity was inferior to that of Speight, or his grantees, the defendants, arising under a contract in rem. for full value.
5. That his Honor erred in deciding that said equity in favor of Elizabeth F. Wright, or her heirs, the plaintiffs, had not been presumptively abandoned under Revised Code, ch. 65, § 19.
6. That his Honor erred in deciding that John F. Speight acquired no interest, title or estate in said land by virtue of the deed from W. T. Wright, or the endorsement by N.W. Arrington, as against the said Elizabeth F. Wright.
7. That his Honor erred in deciding that upon the death of said Elizabeth F. Wright, the equitable title descended to her heirs at law, the plaintiffs, subject to the life-estate of said W. T. Wright as tenant by the courtesy, etc.
8. That his Honor erred in deciding that, upon the death of said W. T. Wright, the right to the possession of the said land accrued to the plaintiffs.
9. That his Honor erred in holding that the execution of the said paper-writing was admitted by the answer.
10. That his Honor erred in not declaring that there was no evidence of the delivery of said paper-writing to said Elizabeth F. Wright, and that while her father may have intended to give her the land, he never effectuated, but abandoned, that intention.
Paragraph two of the complaint is as follows: "That on the said date the said N.W. Arrington executed a deed conveying in fee-simple said land to Elizabeth F. Wright, his daughter, who was then the wife of W. T. Wright, and the said Elizabeth F. Wright shortly thereafter entered into the possession of said land."
(386) Paragraph two of the answer is as follows: "That paragraph two of the complaint is not true. It is admitted that the said Nicholas W. Arrington, on the 18th of January, 1848, signed a paper-writing, but the defendants deny that said document was either sealed or delivered. It is admitted that the said Elizabeth F. Wright and her husband, William T. Wright, occupied said land and appropriated the rents and profits until the 16th day of November, 1857, by permission of her father, N.W. Arrington, but it is denied that the said Elizabeth F. Wright or her husband had any title to the premises."
The complaint was amended by inserting paragraph seven, which is as follows: "The plaintiffs further say that if it shall be found, upon inspection of the paper-writing alleged to be a deed, in the second article of this complaint, executed by N.W. Arrington to Elizabeth Wright, *Page 313 
has not a seal affixed to the name of N.W. Arrington, and is, therefore, not a deed, then these plaintiffs allege that at the time of the execution of said paper-writing, which is made part of this complaint, the said N.W. Arrington was possessed of real and personal property of great value, and that immediately after the execution of said writing, the said Elizabeth Wright took possession of the personal property, and was thereafter, until their emancipation, in possession of the slave property; and she likewise, immediately after the execution of the said paper-writing, entered into the possession of the land mentioned therein, the same that is in controversy by this suit, and she so remained in possession thereof until some time in the year 1857, when her husband, without her assent, executed a deed to one John F. Speight, purporting to convey the said land in fee-simple, the said Elizabeth refusing to join in the execution of the said deed. The said John F. Speight had notice at the time of, and before the execution of said deed, of the interest and title of the said Elizabeth in said land, and those claiming under him had the same notice. N.W. Arrington died in 1861, leaving a (387) last will and testament, and although possessed of a large estate, he did not devise or bequeath anything to his said daughter, Elizabeth Wright, stating as a reason for his failure so to do, in his said will, that he had done her equal justice with his other children by private gifts. That the gift embraced in said paper-writing is all that he ever gave her, and these plaintiffs are advised, and so aver, that if their mother did not have the legal title to said land, that she had the equitable title thereto, which descended, upon her death, to the plaintiffs, as her heirs at law, subject to a life-estate in favor of their father, the husband of said Elizabeth Wright, to-wit, W. T. Wright, and that upon his death in August, 1886, that they became entitled to the possession of said land."
To this, the defendants answer: "That paragraph seven of the complaint (amended at Spring Term, 1889), is not true."
The defendants, in their answer to the amended complaint, deny the allegation that N.W. Arrington executed a deed on the 18th day of January, 1848, to his daughter, Elizabeth F. Wright, under whom the plaintiffs claim, for the land in controversy, and aver that the said Arrington, on that day, "signed a paper-writing," but they deny "that said document was either sealed or delivered." The plaintiffs, in their amended complaint (paragraph *Page 314 
seven), allege that "if it shall be found, on inspection of the paper-writing alleged to be a deed in the second article of this complaint, executed by N.W. Arrington to Elizabeth Wright, has not a seal (388) affixed to the name of N.W. Arrington, and is, therefore, not a deed," c., then that the said Elizabeth entered into the possession of the land described in said paper, immediately after its execution in January, 1848, and occupied and held possession of it until some time in the year 1857, when her husband conveyed it, without her assent, to John F. Speight, under whom the defendants claim.
The Judge below held "that the certificate of probate on said paper-writing is not sufficient to entitle it to registration, but the same being made a part of the answer, the question of its admissibility does not arise." The admission contained in the second paragraph of the answer, that N.W. Arrington, on the 18th day of January, 1848, signed a paper-writing, is one that relieves the plaintiffs of the burden of proving the contents of the paper and the genuineness of Arrington's signature. The defendants thus introduced the paper, reserving only the right to controvert the sealing and delivery of it. The plaintiffs, in their amendment to the complaint, do not insist that there was a seal to the instrument, and the only disputed question of fact left for his Honor was, whether there was sufficient evidence of the delivery to Elizabeth Wright. If the Judge had found the fact only that the deed had been proven and registered, without mentioning the form of registration, the presumption would have arisen that it was in proper form, and that it was delivered.Patterson v. Wadsworth, 94 N.C. 538; Redman v. Graham, 80 N.C. 231. The Judge states, as a conclusion of law, after examining the certificate, that it is insufficient in form to meet the requirements of the statute. Though we concur with him that, by appending the paper as an exhibit to the answer, the defendants waived objection to its admissibility, subject to the reservation as to delivery contained in the answer, it would not follow that the acknowledgment that it was (389) signed would make it available, even as color of title, without satisfactory proof of delivery.
As there was no evidence of the requirement that the plaintiff should prove the delivery, the inquiry is naturally suggested, whether the paper-writing would be competent to show color of title upon parol proof of its delivery to Mr. Wright, or whether probate and registration are essential prerequisites to make it "good and available" in law for any purpose. This Court has construed § 1245 of The Code (since amended by ch. 147 of the Laws of 1885) as making a contract for the sale of land inadmissible without registration in an action brought to enforce a specific performance of it. White v. Holly, 91 N.C. 67. But in the case of Hunter v. Kelly, 92 N.C. 285, the Court said that *Page 315 
"the registration was not indispensable to the use of the deed, as constituting color of title, but proof of its execution was sufficient to give it effect." The distinction evidently intended to be drawn was, that while neither "deed nor contract to convey land nor lease for more than three years should be available to vest an estate, or pass an interest by the mere force of the instrument before registration, the statute was not repugnant to the established rule that a paper-writing, constituting in law color of title, accompanied by continuous adverse possession by the person claiming under it for the period prescribed by law, raises a presumption of a perfect title in the occupant, and is admissible in evidence without registration when offered for that purpose." Hardin v. Barrett, 51 N.C. 159;Campbell v. McArthur, 9 N.C. 33; Chastien v. Philips, 33 N.C. 255. The law thus interpreted works no injury to purchasers, because the fact that another is in possession is sufficient to put those who propose to purchase on inquiry, and is justly held to be constructive notice of his claim. Mayo v. Leggett, 96 N.C. 237.
So that it only remains for us to discuss and determine two (390) questions — first, whether there was any evidence to support the finding that the paper-writing was delivered; and, second, whether, if delivered to her, it constituted color of title.
The endorsement by N.W. Arrington on the deed was a declaration of his against his own interest, and was some evidence that he delivered the instrument to his daughter. It is not necessary that we should adduce any other testimony bearing upon the question, as it was the province of the Judge to pass upon the weight of that offered, and his conclusions of fact, if we find any support for them in the evidence, will not be reviewed in this Court. Burke v. Turner, 85 N.C. 500.
In Ellington v. Ellington, 103 N.C. 54, the late Chief Justice SMITH, delivering the opinion, approves the definition of color of title given by Judge GASTON in Dobson v. Murphy, 18 N.C. 586, to which Chief Justice RUFFIN agreed, with great reluctance, because it was not made broad enough to comprehend any written evidence of title accompanied by possession. That definition is as follows: "Some written document of title purporting to pass the land, and one not so obviously defective that it would not have misled a man of ordinary capacity." Earlier and later adjudications of this Court are in accord with Dobson v. Murphy. See Tate v. Southard,10 N.C. 119; Keener v. Goodson, 89 N.C. 273.
If the paper-writing relied on in our case comes within the description of color of title, the only remaining question of any importance is settled. We think that it does. The reason that underlies the doctrine of maturing title by adverse possession under imperfect deeds or contracts is, that where one, in the exercise of ordinary care and intelligence, is induced to enter upon and cultivate, and sometimes improve *Page 316 
land, because he has some written evidence of title that would naturally induce a man, not trained in the law, to believe that it vested in him what it professed to pass, it would be unjust to recognize or (391) enforce the right of another who brings no action till the end of the statutory period. Wood on Lim., § 159.
The Supreme Court of Georgia hold that any writing which defines the "extent of the claim" is "a sign, semblance or color of title." Field v.Boynton, 33 Georgia, 242.
The Supreme Court of New York hold that where one enters upon land under a contract of purchase, he holds in subordination to his vendor, and his occupation is an elongation of the possession of his vendor till the purchase-money is paid, but when the land is fully paid for the possession of the vendee becomes adverse to the whole world, including the vendor.Whitney v. Wright, 15 Wen., 171; Briggs v. Person, 14 Wen., 227.
The Supreme Court of Alabama held, in Beard v. Ryan, 78 Ala. 37, not only that the vendee's possession becomes adverse on payment of purchase money, but that if the vendee sell before he has paid, a subpurchaser who buys from such vendee and pays the stipulated price, and is put in possession, holds adversely to the original vendor. See alsoElliott v. Mitchell, 47 Tex. 445; Spilter v. Schofield, 43 Iowa 571;James v. Patterson, 62 Ga. 527; Rutherford v. Hobbs, 63 Ga. 243. But upon these questions the authorities of the different States are in conflict. Ellege v. Cork, 5 Lea (Tenn.), 622; Con v. Faupel, 2 W. Va. 238. A majority of the Courts of this country concur in the opinion that, where a man enters into the possession of land under a written contract of purchase, and has, under such agreement, the right to demand the conveyance of the legal title to said land, his possession will be deemed adverse to all the world, and his title will begin to mature when his right to make such demand accrues. Wood, in his work on Limitations of Actions, § 260, after a review of the authorities, states the rule as follows: "To constitute an adverse possession, it must not only (392) be hostile in its inception, but the possessor must claim the entire title, for if it be subservient to and admits the existence of a higher title, it is not adverse to that title. But where a contract is made for the sale of land upon the performance of certain conditions, and the purchaser enters into possession under the contract, his possession from the time of entry is adverse to all except his vendor, and it seems now to be well settled that after the performance by him of all the conditions of the contract, he from that time holds adversely to the vendor, and full compliance is treated as a sale, and the parties in possession may acquire a good title, as against the vendor, by the requisite period of occupancy." These questions have been discussed, by way *Page 317 
of illustration, and to show how far the Courts and leading law-writers of the country have gone in sustaining titles claimed under contracts of purchase with continuous possession; but we decide only the question directly involved in this controversy. Any of the definitions of color of title, however restricted, will, we think, include the writing upon which the claim of Elizabeth Wright is founded. It was in form a deed that purported to convey the entire estate in the land, and only one educated in the law could be expected to understand that a seal was necessary to make it, in reality, a deed, and vest the legal estate in the grantee. We find direct authority to sustain this view in the cases ofBarger v. Hobbs, 67 Ill. 592, and Watts v. Parker, 27 Ill. 224, in both of which the Court held that while a paper purporting to be a deed was not valid for the purpose of conveying title unless it is under seal, yet when a person enters into possession under such a paper it is admissible in evidence for the purpose of showing the extent of his possession and what he claimed by it. Under that paper she held continuous adverse possession for more than seven years before her husband sold and conveyed to Speight in the year 1857, and the law gave her the title, raising the presumption that the legal, as well as the equitable estate, had been granted to her. Rogers v. Mabe, 15 N.C. 180; Wood (393) on Lim., § 254; Washburn on Real Prop., 499; Trim v. McPherson, 7 Calder (Tenn.), 15. The claim to the land might have been abandoned by her at any time before a valid title was acquired by surrender of possession, but after her title ripened into a perfect one, the mere act of leaving the land did destroy it. She had acquired such an estate as could be transferred only by deed, and it descended to her heirs at law, at her death, in the year 1872. School District v. Benson.31 Me. 381; 52 Am. Dec., 618. Under the provisions of § 1, ch. 56, Revised Code, W. T. Wright could convey his life estate, as tenant by the courtesy, without the joinder of his wife, in any land acquired by her before March 1st, 1849, and though she refused to join in the deed to John F. Speight, it was still effectual to pass an estate in the land for the life of William T. Wright, and no longer. Wood on Lim., § 259. He died August 25th, 1886, and the possession of those claiming under his deed was not adverse to her heirs until after his death. It follows, therefore, that the estate of the wife that descended to her heirs, subject to the life-estate of the husband, which passed by his deed to Speight, vested in the plaintiffs, and they held both the legal and equitable estate in the land, and, after the death of the husband, had a right to recover in this action, which was brought on the 12th of April, 1888. Adding to what we have already said in reference to the estate acquired by Elizabeth Wright by possession under the paper-writing, the further statement that said paper was not the less effectual as color of title, *Page 318 
because it was not given for a valuable but for a meritorious consideration, we conclude that the judgment of his Honor should be affirmed, though we reach the same conclusion in a different way. Rogers v. Mabe, 15 N.C. 180.
(394) It seems unnecessary to say that we need not follow the learned counsel in the line of discussion pursued by them as to the equities of the parties, when we hold that Mrs. Wright acquired a title to the land before she left it in 1857, upon which her heirs could recover in ejectment, were the principles of law and equity still, as formerly, administered separately.
Affirmed.
Cited: Mfg. Co. v. Brooks, 106 N.C. 113; McMillan v. Gambill, Ib., 361; Brown v. Brown, Ib., 460; Beattie v. R. R., 108 N.C. 431; Turner v.Williams, Ib., 210; Gilchrist v. Middleton, Ib., 710; Tunstall v. Cobb,109 N.C. 324; Miller v. Bumgardner, Ib., 414; Henning v. Warner, Ib., 410;Hargrove v. Adcock, 111 N.C. 170; Hodges v. Wilkinson, Ib., 64; Ladd v.Byrd, 113 N.C. 469; Walker v. Moses, Ib., 530; Neal v. Nelson, 117 N.C. 403;Shaffer v. Gaynor, Ib., 24; Everett v. Newton, 118 N.C. 922; Utleyv. R. R., 119 N.C. 724; Williams v. Scott, 122 N.C. 550; Ratliff v.Ratliff, 131 N.C. 431; Greenleaf v. Bartlett, 146 N.C. 498; Barrett v.Brewer, 153 N.C. 550; Buchanan v. Clark, 164 N.C. 61; Norwood v.Totten, 166 N.C. 650; Gann v. Spencer, 167 N.C. 432; Knight v. LumberCo., 168 N.C. 454; Kivett v. Gardner, 169 N.C. 80; Byrd v. Spruce Co.,170 N.C. 435.