WILLIAM GILCHRIST v. D. W. MIDDLETON.

*Ejectment, Evidence in—Laches—Color of Title—Tenant by the Curtesy—Entries and Grants—Executors and Administrators.*

1. Where the plaintiff offered a junior grant, issued upon a senior entry, for the purpose of showing title out of the State, and also testimony tending to show seven years' continuous adverse possession under colorable title on the part of those through whom he claimed, and the defendant offered a grant of older date than that introduced by the plaintiff issued upon a junior entry, but also offered *mesne* conveyances to connect himself with both the older and younger grants : *Held*, (1) that the plaintiff was not precluded from using either grant to show that the State did not controvert his title, in connection with proof of possession under colorable title by himself or those through whom he claimed ; (2) that no equities being set up in the pleadings, the older title is deemed paramount, and one who connects himself with it is considered the true owner ; (3) that where two of five heirs at law, to whom the legal title had passed by conveyances and descent from the senior grantee, were *sui juris* during the seven years when the land was occupied by B., under whom the plaintiff claims, such heirs at law, and those claiming under them, could not avoid the consequences of their *laches* in failing to sue the tresspasser, by showing that during the period of such occupancy their rights to sue under the junior grant had not accrued ; (4) that the junior grantee, and those claiming under him, took but a bare right to bring an action to establish their equity, and until the legal title should be conveyed to them under a decree of Court, the junior title was available only as color ; (5) whether the husband of one to whom the junior title had passed by purchase or descent held as tenant by the courtesy, such an interest as was, before the 1st of March, 1849, liable to sale under execution, *quære.*

2. Where a grant was issued in 1847, the grant was not void upon its face, as was declared in the former appeal in this case ; but the enterer had a right to call for a grant even forty-six years afterwards, provided the purchase-money was paid to the State before the 31st of December of the second year after the entry was made.

108—45

3. The effect of the Act of 1842, ch. 35, was to revive an entry lapsed for want of payment of the purchase-money as of the date of the act, and therefore, an entry made in 1801, would, when revived, be junior to one made in 1841.

4. A resolution passed by the General Assembly in 1847, and reciting that the purchase-money for the land entered in 1801 had been paid in 1804, would not divest any right acquired under the grant of 1842 issued upon the entry of 1841.

5. After the lapse of so many years, and without actual notice that the purchase-money for the older entry had been paid, another might innocently enter and take out a grant for the land for his own benefit.

6. The personal representative has no control over the land of a decedent till he obtains license to sell in order to make assets, but a sale by the heirs or devisee within two years after the grant of letters of administration is declared, as against the creditor or personal representative, void.

7. The provision was not intended to save the heir or devisee from the consequence of his own *laches*, or to deprive one who has been more diligent of a right acquired under section 141 of *The Code*.

Petition of defendant to rehear.

*Messrs. Burwell & Walker* (by brief), for petitioner.
*Messrs. Frank McNeil* and *John D. Shaw* (by brief), and *George V. Strong, contra.*

AVERY, J.: This was a petition to rehear the case argued at the February Term, 1890 (107 N. C., 663.). The application to rehear was allowed only as to the holding of the Court that the grant to McFarland in 1847, under an entry made in 1801, was void upon its face, and as to such exceptions as were not considered by the Court by reason of the ruling that the grant mentioned could be collaterally attacked on that ground.

The plaintiff offered a grant to Duncan McFarland dated January 13th, 1847, issued on an entry dated July 4th, 1801. The defendant offered a grant to Duncan McLaurin dated

March 31st, 1842, issued by virtue of an entry made in the year 1841.   It is admitted that both of these grants cover and include the land in controversy in this action.

Looking only to the older grant tó McLaurin as the source of title, and leaving the junior grant out of view, it is admitted by both parties that whatever interest was acquired by the original grantee passed through several *mesne* conveyances to one John L. Fairly, and descended upon his death to five children, three of whom were laboring under disability such that the statute did not run against them during the time when J. B. Buchanan held the possession of the land in controversy, and two of whom were under no disability during that period.   The plaintiff relied solely, after showing title out of the State by the McLaurin grant, upon this possession of Buchanan under a deed for the premises from one McKoy to him dated Septemler 23d, 1863.   This alleged occupancy by Buchanan extended over the period from the date of his deed in 1863 till the year 1879, when the interest of John L. Fairly was sold by his administrator and bought by one McLaurin,   McLaurin conveyed it immediately to the defendant Middleton, who claims that Fairly could show a chain of title connecting him with both grants, being the deeds and evidence offered by the defendant.

The legal, and presumably the equitable, estate in the land passed by the older grant to McLaurin.   His title could not, under the former practice, have been successfully attacked or impeached in a Court of law by McFarland. The claimant under a junior grant, but senior entry, if he would avoid the older patent, was compelled to resort to a Court of equity, and allege and prove that the prior grant was obtained by the grantee therein named with knowledge of the first entry.   *Plemmons* v. *Fore*, 2 Ired. Eq., 312; *Harris* v. *Ewing*, 1 Dev. & Bat. Eq., 369; *Stanly* v. *Biddle*, 4 Jones' Eq., 383.

Where controversies have originated in such conflicting claims, it has sometimes happened that the grantee under the senior grant issued on the junior entry brought an action of ejectment against the grantee in possession claiming under the junior grant and senior entry, and the latter, being unable to set up his equity as a defence in a Court of law, filed a bill in the Court of equity, asking that the former be declared a trustee ordered to convey the legal estate, and that, pending the investigation of his claim for such relief, the plaintiff, in the action of ejectment, should be enjoined from further proceedings. In other instances the junior grantee was evicted, and subsequently filed his bill. If, in such suit, the plaintiff succeeded in proving that the defendant had either actual or constructive notice of the older entry when he took out his grant, and that the older entry covered the same land embraced in it, then the Court would declare the defendant a trustee for the plaintiff, and compel him to convey the legal title. But the burden was upon the claimant under the junior grant, then, as it is now, to establish this fraud in a direct proceeding, in which it must be distinctly alleged. *Currie* v. *Gibson*, 4 Jones' Eq., 25; *Munroe* v. *McCormick*, 6 Ired. Eq., 85; *Allen* v. *Gilreath*, 6 Ired. Eq., 252. As there is no evidence to show that McLaurin was ever declared a trustee and required to convey the legal title, the grant to McFarland could, in the most favorable view, be made available only as colorable title where continuous adverse possession was shown in those claiming under it for the statutory period. If it be conceded that the junior grant was valid upon its face, the only actual possession of which there appears to have been any evidence was that of Buchanan, the benefit of which enured to the plaintiff, if to anyone, the title having been traced from Buchanan by *mesne* conveyances to the plaintiff, as is admitted. Buchanan occupied under the deed from McKoy to him, which covered the land in dispute, and which the Judge properly told the jury was colorable title.

It was not error, in any aspect of the testimony, to instruct the jury, that if they should find that Buchanan held continuous adverse possession of the *locus in quo* for seven years, exclusive of the period when the statute of limitations was suspended (from May 20th, 1861, to January 1st, 1870) the plaintiff was entitled to recover.

The older grant is in a strictly legal, as distinguished from an equitable proceeding, paramount as evidence of title, and if it did convey the title out of the State, it is admitted by the plaintiff that such estate as passed by it was transmitted by *mesne* conveyances to John L. Fairly, and on his death descended to his five children. The plaintiff claims that he is entitled to recover two undivided fifths, and concedes the defendant's right to three undivided fifths, which descended to the three children of Fairly, who were under disability, passed by the administrator's deed to McLaurin, and was conveyed by McLaurin to the defendant.

Only such interest as was acquired by the junior grantee, McFarland, descended to his heirs at law, and was transmitted by the *mesne* conveyances offered, if all of them had been admitted to be valid, to the defendant. If McFarland's grant was available only as color of title in a Court of law, as against the old title, and gave him only a right of action in equity, those holding under him could acquire nothing more through a chain of conveyances and descents.

Let us suppose, for the sake of argument, that John G. Pearson became the husband of McFarland's daughter, to whom, whatever title McFarland held under that grant, descended before the 1st of March, 1849, and that John G. Pearson's interest, as tenant by the curtesy, was regularly levied upon and sold by Buchanan, Sheriff of Richmond County, and conveyed to McCall, to whom the defendant traced his title. The defendant would thereby have shown a better title than that of plaintiff derived through the deed from McKoy to Buchanan, and the possession of the latter

under it.    The plaintiff had not attempted to connect himself by *mesne* conveyances with either of the grants.    He offered the younger grant to show title out of the State simply, and when the defendant introduced the senior grant, he was not precluded from saying that he did not dispute the fact that the title passed by the last mentioned grant, but, if it did, still the possession upon which he relied would vest the title in him as to two undivided fifths of the land.    *The Code*, § 141.    But, while it appears that the wife of Pearson died before April, 1852, leaving a son, who died in February, 1872, the date of the marriage is not given in the statement of the case.    We infer that he was married after March 1st, 1849, and if so, the Sheriff's deed was void, and there would have been no error in the instruction in reference to it if the title had actually been in his wife.    *Avent* v. *Arrington*, 105 N. C., 393; Rev. Code, ch. 56, sec. 1.

It is manifest that in any aspect of the evidence the right of the plaintiff to recover two undivided fifths of the land in dispute depended upon the question whether he had shown continuous adverse possession under color of title on the part of Buchanan, through whom he claimed.    The deed from McKoy to Buchanan was color of title, and the fact that the right of the heirs of Fairly, and those claiming under them, to bring an action, relying on the McFarland grant to establish title, did not accrue till Pearson died in 1883, would not interfere with the right which the two heirs, who were *sui juris*, had on the 1st day of January, 1870, and for seven years thereafter, to evict Buchanan under the *prima facie* title shown by the defendant in this action by means of a series of *mesne* conveyances connecting him with the older grant to McLaurin.    Having shown that the two heirs of Fairly had a right to recover under that title, the defendant cannot avoid the consequences of their *laches* by saying that they could not then establish their right in equity to have the junior grant declared superior to the senior grant because

of a fraud, which is neither alleged nor proven, practiced by McLaurin upon McFarland. If the plaintiff had exhibited a chain of title connecting himself with the McLaurin grant, such as the defendant has offered, instead of relying on proof of possession under color of title, the defendant would not in that event have been permitted, after setting up a strictly legal defence by denying the plaintiff's title, and that his possession was tortious, to nonsuit the plaintiff because the two heirs of Fairly could not, during Buchanan's occupancy, have instituted a suit in the nature of a bill in equity and have tested their ability to discover and adduce such proof of fraud on the part of McLaurin as would have converted him into a trustee for McFarland.

But the defendant traces his claim under both grants through Ferdinand McLeod. The testimony offered by the defendant shows that Duncan McCall, the purchaser of Pearson's interest as life-tenant under the junior grant, conveyed it to Ferdinand McLeod on the 24th of September, 1857, and that on the same day Duncan McLaurin, the grantee named in the senior grant, also conveyed all of his interest held under it to said McLeod, who subsequently, on the 16th of April, 1858, conveyed all of the title and interest acquired by the merger of the two interests to John L. Fairly. The defendant also exhibited a series of *mesne* conveyances showing a chain of title connecting him with a deed from John G. Pearson to Addison Stevens, executed on the 17th of April, 1875, after he had inherited from his son Tryon Pearson whatever estate had descended to his mother under the McFarland grant. If we admit that an action might have been brought by Tryon Pearson, and after his death by his father and heir at law, John G. Pearson, between January 1st, 1870, and April 17th, 1875, and by Stevens between the last named date and the 7th of January, 1878, in which the burden would have been on them to show that McLaurin practiced a fraud on McFarland in obtaining the grant, still

the title was vested absolutely under the senior grant in Fairly's heirs, and in this action any person controverting the rights of claimants by virtue of Buchanan's possession must submit to the consequences of the *laches* of the two who were, during that period, *sui generis*.

If Buchanan occupied the land in dispute, cultivating a portion of it every year for seven years after the 1st of January, 1870, as the testimony tended to show, under the McKoy deed, which embraced it within its boundaries, then, for the purpose of showing title out of the State, the plaintiff who claimed under Buchanan might offer himself, or rely on when introduced by the defendant, any or all grants from the State which included the *locus in quo*, for the purpose of showing title out of the State and diminishing the statutory period requisite for the maturity of his title from twenty-one to seven years. The plaintiff did not attempt to connect himself with either of the grants, nor was there any testimony tending to connect him by a chain of *mesne* conveyances with any source of title in common with the defendant, and thereby throw around him the trammels of any rule of evidence that would interfere with his right to avail himself of the oldest grant exhibited to prove that the State had no interest in the controversy. It being conceded that both grants cover the area upon which the trespass was shown, the defendant might elect to rely on the older and better title exhibited for the purpose mentioned, and when he coupled with it proof of color of title and continuous possession for seven years, he was entitled to recover, even though the defendant exhibited a chain of title connecting him with both grants, unless it had appeared that no right of action accrued to the defendant, or those through whom he claimed title, under the senior grant to McLaurin against Buchanan during his occupancy of the premises, but did accrue afterwards.

As Pearson derived all of the right or title that he had through the younger grant, if we admit that McCall got by

the Sheriff's deed whatever interest Pearson could claim as tenant by the curtesy, still he acquired, as against those claiming under the senoir grant, at best but a bare right, which would not avail him or them as evidence of title in this action.

It is not material whether the Sheriff's deed was utterly void or passed only a right. As it did not in any aspect of the evidence tend to establish title in the defendant to the land in controversy, the defendant has no just ground of complaint, even if his Honor erred (which we do not admit) in telling the jury, that the deed from Buchanan, Sheriff, to McCall conveyed no title because of irregularities in the judgment or execution, or because Pearson had but a bare right not subject to sale under execution, or an estate by the curtesy which the law prohibited the Sheriff from selling.

It is unnecessary to review the authorities cited or pass upon the point urged by the able counsel for the plaintiff on the argument, to-wit, that John G. Pearson as the husband of one claiming through the junior grant a mere right in equity to compel the grantee under the older grant to convey, had no estate which is subject to sale under execution under section 450 of *The Code.* It is immaterial, too, for the purpose of disposing of this appeal, whether the Sheriff was prohibited from selling such estate as Pearson claimed as tenant by the courtesy because he was married after March 1st, 1849, as the sale passed only such interest as he acquired through his wife, who, if living, would have had the same right of action for the fee.

Where a person, after having perfected the title by possession under a colorable deed, moves off the premises, he is not deemed to have abandoned his right by voluntarily leaving. The estate thus vested remains in him until it is aliened by him or those in privity with him, lawfully sold under judicial decree or process, or another divests it by adverse possession subsequent to his departure. Wash. R. P.,

p. 499; Wood on Lim., § 254; *Avent* v. *Arrington*, 105 N. C., 393; *Manufacturing Co.* v. *Brooks*, 106 N. C., 113.

If Buchanan acquired title, therefore, it passed to the plaintiff through the *mesne* conveyances offered, notwithstanding the fact that Buchanan left after his title was matured and the defendant entered and took possession.

It is admitted that without actual possession on the part of defendant, or of those under whom he claims, the plaintiff's title to two undivided fifths would mature, and did mature, as against the perfect chain of title offered by the defendant to connect himself with the senior grant to McLaurin, unless for some reason the running of the statute of limitation was suspended as to all of the heirs of Fairly, as well as the defendant, from January 1st, 1870, till the action was brought in 1882. If the possession of Buchanan would have been sufficient against McLaurin, or those claiming under him and holding the legal and, presumably, the equitable title, to divest their estate and vest it in him, it would seem absurd to hold that the statute did not run in favor of Buchanan, and for the ultimate benefit of the plaintiffs, because another grant has been exhibited which in this action could be used only as color of title, and which, at best, might furnish the basis of a claim to the equitable estate, possibly not susceptible of being established.

If such were the law the recovery of plaintiff in ejectment might be prevented by exhibiting a worse title, when a better would not subserve the purpose. The position of the defendant involves the still more startling proposition that, though he acquired the estate that passed by the older grant to McLaurin by deed from W. H. McLaurin dated March 18th, 1879, and the interest of Tryon Pearson that descended under the younger grant was conveyed to him by McCall and wife on 31st of March, 1879, he will be permitted to prevail in an action raising only the issues of title and possession, and drive the plaintiff to a nonsuit because

McFarland and others, through whom he connects himself with the junior grant, may have had the right in equity to demand a conveyance of the legal title from McLaurin and those claiming under the older grant to him.

It is manifest that the plaintiff's right to recover two undivided fifths of the land depended solely upon the question whether Buchanan cultivated any portion of the land in controversy for seven consecutive years between January 1st, 1870, and the date of the summons in this action, unless the defendant's right of action had accrued by reason of the death of John L. Fairly and the liability of his lands to be subjected for assets by his administrator.

It is familiar learning that the personal representative has no control over, or connection with, the land belonging to the decedent, unless and until he, under the statute (*The Code*, § 1436), applies for and obtains license to sell it in order to pay the debts and charges of administration. It was evidently the purpose of the framers of the statutes providing for settlements by executors and administrators, that they should be required to render their final accounts within two years after qualification, if possible. *The Code*, § 1488. For the benefit of the creditors only, and in harmony with that idea, all conveyances of real property of a decedent by a devisee or heir at law, made within two years after the grant of letters to the personal representative, are declared "void as to creditors, executors, administrators and collectors of such decedent," but such conveyances, when made more than two years from the grant of letters to *bona fide* purchasers for value and without notice, are "*valid even as against creditors.*" *The Code*, § 1442.

The evidence proposed was not only to allow the administrator to sell when necessary to satisfy the demands of creditors, but to restrain heirs and devisees, for a reasonable time, from disposing of the real property, and thereby depriving the creditors, who are represented by the executor or

administrator, from making it available as assets.   It will
not be so construed as to save the heir from the consequences
of his own *laches*, or deprive one who has shown more dili-
gence of the rights acquired by him under the express pro-
vision of another statute.   *The Code*, §141.

Thus far we have conducted this discussion upon the idea
that both grants were valid upon their faces, but that both
being exhibited, the title would be deemed to have passed
by that first issued, until, by a direct proceeding, the older
grant should be declared fraudulent as against the younger.
But it is insisted that the Court erred in holding that the
grant to McFarland was void upon its face.   It is true that
the Court did not advert to the fact that the statute, then in
force, in the year 1847, permitted one, who entered land, to take
out his grant, provided he should pay the purchase-money
to the State before the "thirty-first day of December, which
should happen in the second year thereafter," but did not
declare a grant void because it was issued, or the survey was
made after that time had elapsed.   Rev. Stat., ch. 42, sec.
10; *Krous* v. *Long*, 6 Ired. Eq., 259; *Stanly* v. *Biddle*, 4 Jones'
Eq., 383.   The result would be, that while it is correct, as a
principle, to hold that a grant, which, upon its face appears to
have been issued in contravention of law, is void, the partic-
ular grant to McFarland, was not on its face invalid.

Neither of the grants has come up with the record as an
exhibit.   Under the terms of the Act of 1796, ch. 455, § 13
(2 Potter's Rev., p. 807), a grant was not valid if taken out
more than two years after the entry was made.   This section
was repealed by the Act of 1804, ch. 651 (2 Potter's Rev.,
p. 1010).   At the same session of the General Assembly
another act was passed which is substantially the same as
*The Code*, § 2766; Acts of 1804, ch. 759 (2 Potter's Rev., 1149).

So that, where a grant was issued in 1847 upon an entry
made in 1801, it was not upon its face void.   If the purchase-
money was paid to the State before the 15th (now the 31st)

of December of the second year after the entry was made, the grant was valid under the statute then in force. *Krous* v. *Long, supra.*

McLaurin's entry was made in 1841, and his grant was taken out in 1842. The first question suggested by the dates of the entries and grants is, whether the various acts extending the time for taking out patents affect the legal status of the claimants under them. Though the Act of 1842, ch. 35, did not contain the saving clause in reference to junior entries, couched in the same terms as the other acts in relation to that subject, it was construed by the Court to mean the same thing. *Buchanan* v. *Fitzgerald*, 6 Ired. Eq., 121. In the case of *Bryson* v. *Dobson*, 3 Ired. Eq., 138 (decided in 1843), the Court having previously declared that "against another subsisting entry, one that has lapsed is revived as of the date of the statute by which it is revived." The only effect of the Act of 1842, then, would be to make the rights of the parties the same as if the entry of McFarland had been made in 1842, on the day when the act was passed, thus making his entry (as well as his grant) junior, in contemplation of law, to that of McLaurin.

But the defendant insists, in his petition to rehear, that this Court must take notice of a resolution passed by the General Assembly on the 7th of January, 1847 (Laws of 1846–'47, p. 381), while the plaintiff maintains that it is a private law and the Courts cannot take notice of it unless it has been offered in evidence. Waiving all objection to its introduction and identity as authority for issuing the McFarland grant, we would encounter insuperable difficulty in declaring it a superior title to the grant issued before the passage of the resolution. The legislative recital that the purchase-money was paid by McFarland in 1804 would not fix Duncan McFarland with notice. Indeed, he could not have been affected by such notice if it had been proven in an action for possession to which he was a party. Even

if the resolution can be noticed by us, and we should go further and accept as true the statement that it is referred to in the grant as the legislative authority for issuing the grant, it will not be contended that, in the absence of a judicial declaration of fraud on McLaurin's part, the Legislature had the power to divest out of McLaurin such title as had already vested in him under his grant in 1842 and transfer it to McFarland. *Stanmire* v. *Taylor*, 3 Jones, 207; *Stanmire* v. *Welch*, 3 Jones, 214.

In *Buchanan* v. *Fitzgerald, supra,* Chief Justice RUFFIN delivering the opinion, said, in reference to the validity of a senior grant, taken out after the purchase-money had been paid by a junior grantee, who had an older entry, ".certainly without notice of it (the payment), the defendant might, innocently and justly enter the land and lay out his money for it after a lapse of upwards of five years from the date of the entry and nearly three from that of the alleged payment of the money into the treasury, and, therefore, is entitled in consequence to hold it to his own use." In that case the defendants had brought an action of ejectment against the plaintiffs, who were heirs at law of the claimant, under the junior grant and senior entry, and had evicted them, and after being ejected, the plaintiffs had filed a bill asking to have the defendant declared a trustee, but had failed because there was "nothing in the case to affect the defendant with notice of" the payment of the purchase-money. In our case, about forty-three years intervened between the payment of the purchase-money and the issuing of the grant, instead of five. A more marked distinction, however, arises out of the fact, that while no suit had ever been brought against Duncan McLaurin to fix him with notice of the entry and payment of the purchase-money, and declare him a trustee, the defendant, under a general denial, in an ordinary action for title and possession, asks the Court to declare that one of the grantees, through whom he claims, defrauded the other

through whom he claims also, and should be declared a trustee as to the land in controversy for his benefit.   This relief is asked without a scintilla of evidence to fix McLaurin with actual or constructive notice of the entry or payment of the purchase-money by McFarland, before his grant was issued, and for the purpose of transferring the legal title at this late date, in an action wherein no equity is alleged on the part of the junior grantee McFarland, and those claiming under him, and then showing the statute of limitations did not run in favor of Buchanan as against that title, because Pearson's life-estate had not terminated when he occupied the premises.

Only such exceptions of the defendant as the Court did not consider on the former hearing, because of the holding that the McFarland grant was void upon its face, are open for discussion upon the rehearing.

All of these fall within the principles we have announced, and are disposed of, whether specifically mentioned or not, since we have sustained the Court below in leaving only the question of possession to the jury, on the ground that if it were admitted that the defendant could trace his title to both the grants offered, the plaintiff, in view of the other admitted facts, was entitled to recover two undivided fifths of the land, if Buchanan cultivated the land for seven years, when the statute was running as to the two heirs of Fairly, who were not under legal disability.

For the reasons stated, we hold that if it were error to tell the jury that the Sheriff's deed for Pearson's interest was void, that error was harmless, and no other material error was shown.

Petition dismissed.