M. R. KIMSEY et al. v. A. P. MUNDAY et al.

*Cherokee Lands—Lapsed Entries—Grant Under Junior Entry.*

1. Where enterers of Cherokee lands, as to the acquisition of which a mode of procedure different from that applicable to other public lands was in force prior to November 1, 1883 (see sections 2465, 2466 and 2477 of *The Code*), laid their entries in 1855 and 1860, and failed to comply with the requirements of law and to pay the purchase-money and take out grants until February, 1890: *Held*, that their long delay was an abandonment of the equity which their entry gave them to acquire title to the lands so entered, and having obtained grants they held the legal title to the lands in trust for a grantee of the same land issued in October, 1890, under an entry made in December, 1889, and this would be so even if the later grantee had made his entry with notice of the previous entries of 1855 and 1860.

2. A grant of land made under a lapsed entry is not necessarily void, and where, in an action of ejectment involving conflicting entries, the plaintiff seemed to have the senior entry and a senior grant, but the defendant, junior grantee under a junior entry; in his defence alleged that the plaintiff's senior entry had lapsed, and set up his equity to have the plaintiff declared a trustee for defendant under his later entry: *Held*, that such assertion of counter-claim or equity was not a collateral attack on plaintiff's title.

3. It was not error in the trial Judge to refuse to submit issues tendered by a party in an action of ejectment when it appeared to such Judge that every pertinent inquiry could be presented in the three issues ordinarily submitted in such actions.

4. Where plaintiff claims under grants issued under lapsed entries he cannot fall back on a subsequent entry made a short time before such grants were issued.

5. Where a junior grant under a junior entry is good against a senior grant under a lapsed senior entry the question of the priority of survey is of no moment, nor is vagueness in the junior grantee's entry if cured by his survey and grant.

CIVIL ACTION for the recovery of three tracts of land claimed by the plaintiffs and in possession of the defendants, tried before *Bynum, J.*, and a jury, at Fall Term, 1892, of MACON Superior Court.

The defendants, admitting that they were in possession of the land, denied plaintiffs' title, or that their (defendants') possession was unlawful, and for further answer and defence, and by way of affirmative relief, alleged:

1. That the lands claimed by plaintiffs were entered by the defendant A. P. Munday on the 21st day of December, 1889, and a short while thereafter surveyed, and on the 20th day of October, 1890, he obtained a grant therefor, and, for a valuable consideration, conveyed the same to the defendant S. C. Heighway.

2. That on the 27th day of January, 1890, the plaintiffs laid an entry on the same land that the defendant A. P. Munday had entered theretofore, to-wit, 21st December, 1889, and for which the plaintiff has brought this action; the entry of the plaintiff being No. 13,534, and is on the opposite page from the entry of the said A. P. Munday.

That under the entries as follows, one to James Kimsey, No. 9,360, for 100 acres, dated 15th March, 1860; one to T. P. Monroe, No. 8,059, for fifty acres, dated 6th January, 1855, and one to L. L. Kimsey, No. 8,060, for 100 acres, dated 16th January, 1855 (all the lands lying on Choga Creek), the plaintiff Kimsey procured the State to issue to him, as assignee, three State grants on the 10th day of Feb-

ruary, 1890; that the said State grants contained the numbers of the said entries, but not the land in the locality of the entries, but the State grant contains the land of the defendants, which is between two and three miles from the lands pretended to be entered by the aforesaid entries.

That the lands embraced in the entries aforesaid, laid in 1855 and 1860, have never been surveyed by plaintiff nor his pretended assignors, nor has the plaintiff, nor any one for him, nor his pretended assignors, ever listed the same for taxation, nor paid taxes thereon.

That the plaintiff shifted his entry so as to embrace the lands of the defendants, which are between two and three miles from the lands as entered as aforesaid.

That the plaintiff and his assignors had long since abandoned the entries aforesaid made in 1855 and 1860, and that subsequent to the entry made by defendant A. P. Munday, on the 21st day of December, 1889, the plaintiff laid an entry on the defendants' land (and for which this action is brought) on the 27th day of January, 1890, and when he ascertained that the defendant A. P. Munday had theretofore laid an entry the said plaintiff then abandoned his said entry made the 27th day of January, 1890, and procured duplicate warrants to issue on the entries of his pretended assignors, and, with C. W. Slagle, County Surveyor for the County of Macon, undertook to locate and survey the aforesaid entries, when they found the said entries were so vague and indefinite that they neither could locate nor survey the same.

Whereupon the said C. W. Slagle, County Surveyor for the County of Macon aforesaid, proposed to the plaintiff that for an undivided half interest in the said entries he would shift the said entries, survey the lands, and that he would procure the State grants, and that this whole matter must be kept a secret. A bargain and covenant

was then made, and the said County Surveyor proceeded to go a distance of between two or three miles from the said entries and run and surveyed the lands of the defendants, and used only the numbers of the said entries of the years 1855 and 1860 aforesaid, and the locality of the land where the defendants' was situated, and procured the State to issue State grants for the same before the defendant A. P. Munday could procure his grant from the State, well knowing, however, the defendant had the senior entry on the same, for the said defendant had told the said C. W. Slagle of the same.

That the said lands entered by the said A. P. Munday were vacant at the time of his entry, and had never been surveyed, and that his said entry conveyed five hundred and sixty acres of land, and for which, as above stated, he obtained a State grant.

That the said entries for the two hundred and fifty acres of land, although entered in the years 1855 and 1860, had never been located nor surveyed; that the same was so vague and indefinite that they could not be located, and, from the reading of the same, no one could have knowledge or notice of their locality; that the same was years ago abandoned; that it is a matter of public notoriety that the plaintiffs never even pretended to have a claim, much less a title, to any lands nearer the defendants' than three miles.

3. That C. W. Slagle, being owner of an undivided half interest of the plaintiff's pretended title, is a necessary party to this action. Wherefore the defendant asked the Court that he may be made a party plaintiff to the action, so that the right and interest of all persons be adjudicated in one action.

4. That the said M. R. Kimsey and C. W. Slagle are constructive trustees for the benefit of the defendant, to

any pretended title they may have to the lands involved in this action. Wherefore the defendant prays—

1. That C. W. Slagle be made a party plaintiff to this action.

2. That the defendants have judgment that the plaintiffs M. R. Kimsey and C. W. Slagle be declared trustees for the benefit of the defendants for any and all such interest they may have in the lands involved in this action, and that they be decreed to convey the same to the defendants.

3. For costs and for other and further relief, etc.

The plaintiff, in reply to the matter of affirmative relief set up in defendants' answer, says—

That paragraph one of defendants' answer, setting up affirmative relief, is not true, except wherein it says entries of land made by James Kimsey, Theron P. Monroe and L. L. Kimsey, and that the lands described in plaintiffs' complaint were granted thereon on duplicate warrants of survey to M. R. Kimsey, assignee of the said James Kimsey, Theron P. Monroe and L. L. Kimsey.

That if defendant A. P. Munday made any entry of land, said entry was so vague and indefinite that it gave no notice of the location of the same, and that the plaintiff had no notice of any entry made by said defendant Munday at the time of taking out his said grant.

That plaintiff is informed and believes that defendant Munday never made or had any entry that would cover the lands described in plaintiffs' complaint, nor that any survey was ever made by or for the defendant Munday of the lands described in plaintiffs' complaint, or any part thereof, and if he ever obtained any grant from the State for said lands, or any part thereof, he did so by fraud and in violation of law.

That allegations three and four of defendants' answer, setting up affirmative relief, are not true.

On the trial the plaintiffs tendered eight issues, which were declined, and upon the conclusion of the evidence the Court submitted the ordinary issues in ejectment, and the defendants excepted.

The plaintiffs introduced three grants from the State of North Carolina to M. R. Kimsey, all dated February 10, 1890, and numbered 9,902, 9,903, 9,904. Grant No. 9,902 was for fifty acres of land, the others for one hundred acres each.

The defendant then introduced one Franks, who testified that he was sixty-six years old; lived in Macon county fifty-five years; known Chauga Creek since 1838; never heard it called anything but Chauga Creek; that he was entry-taker of Macon county, and had the entry book; that entry 8,059 is in the name of Thomas P. Monroe, and is as follows: "Thomas P. Monroe enters fifty acres of land on Chauga Creek, beginning on the line of M. R. Kimsey, entry No. 8,058, and runs various ways for complements. Entered January 6, 1855"; that a duplicate warrant issued on September 25, 1883; that entry 8,060 is in the name of L. L. Kimsey, and is as follows: "L. L. Kimsey enters 100 acres on waters of Choga Creek, beginning on the north boundary line of M. R. Kimsey, on the head of Wolf Creek branch, and runs north for complements, between said M. R. Kimsey and James Kimsey land, on the side mountain. Entered 16th January, 1855"; that duplicate warrant issued September 25, 1883; that entry 9,360 is in the name of James Kimsey, and is as follows: "James Kimsey enters 100 acres of land on Choga Creek, beginning and running so as to include the vacant land on the west side of Jason Morris's entry. March 15, 1860"; that no duplicate warrant issued on that; entry 13,521 is in name of A. P. Munday, and is as follows: "Macon county, North Carolina. 640 acres, Nantehalah township, on the waters of Nante-

halah River, commencing on the south-east boundary line
of the Chestnut Orchard tract, and runs so as to include all
the vacant land between the Tooney Gap and the May
place, and runs various ways for complements.    Entered
December 21, 1889 "; that entry 13,524 is in M. R. Kim-
sey's name, dated January 27, 1890.

The defendant introduced a grant from the State to A. P.
Munday, dated October 20, 1890, and a deed from Munday
to Heighway, dated March 16, 1891.    The defendant closed
his case.

The plat of the land was as follows:

NOTE.—The plaintiffs' lands are represented inside the dotted lines and
the defendant's by the dark solid lines.    The May lot, No. 2, and the
Chestnut Orchard lands are not in dispute.

Kelley testified that he was a surveyor and surveyed the
lands in dispute under order of Court; that the solid lines
were covered by defendant's grant and the dotted lines by

the plaintiffs' grants; that the defendant's grant does not cover all the land covered by plaintiffs' grants.

The Court charged the jury as follows:

"The burden is upon the plaintiff to satisfy you by a preponderance of the evidence that his grants are located and cover the lands in controversy. Under the pleadings and admissions in this case you will have to answer the first issue, 'Yes.' It is admitted that the plaintiffs' grants cover the lands included within the line; that the defendant's grant covers the land included within the solid lines indicated by the letters A, B, C, D, E, F, G, H, I, J, K, L; that the map is correct, and the defendant admits they are in possession, so the plaintiffs will be entitled to an affirmative answer to the first issue under what I shall say to you further on. The plaintiffs claim title by virtue of three State grants to M. R. Kimsey, dated February 10, 1890; the defendant claims title by virtue of a State grant to A. P. Munday, dated 20th day of October, 1890. The rule of law in regard to entries is that the entry must be sufficiently definite in its description to point out the lands intended to be covered by it. And when it is so definite it is notice to everybody, and any one else entering it will do so subject to the rights of the first enterer to have title made to him by the State. In this case the plaintiffs have shown no entry sufficiently definite in its terms to put the defendant on notice, and his entry and grant are not affected by any entry of the plaintiff. The defendant's entry, I charge you, is sufficiently definite to give notice to the plaintiffs, not as to all the land covered by their grants, but as to a part of it, and I charge you that under their entry and grant the defendants in this case are the owners of the land between the May place and Tooney's Gap, and the true line of the defendants is running from I, the south-west corner of the May place, to 4, the south-east corner of the Chestnut

Orchard. All the land east of that line within the solid lines is the defendants', and they are entitled in any event to a decree against the plaintiffs to have title made to them. The main question for you to decide in this controversy is, are the plaintiffs the owners of the lands west of the north and south line from I to 4, and what is covered by defendants' grants? And this depends upon the question of notice to the plaintiffs of the defendants' entry. I charge you that the entry in itself on the books of the entrytaker is not sufficient notice as to any but the lands between the May place and Tooney's Gap, which I have explained to you; but the defendants say they have given to the plaintiffs actual notice that their entries were there and covered the land. If you find the fact to be that A. P. Munday notified Kimsey and Slagle, as testified to by him, that his entry was there and covered the land, that notice and the entry was sufficient, and the plaintiffs cannot recover any of the land from the defendants that are covered by the solid lines. So that if you find this to be so then I instruct you to return your answer to the first issue, 'Yes, outside of the solid lines.' If, on the contrary, you find that A. P. Munday did not give the notice to Kimsey and Slagle, as contended by him, but the only notice the plaintiffs had was the entry, then I instruct you to answer the first issue, 'Yes,' and I will understand the verdict as establishing the line of the defendants from I to 4.

"The second issue under the pleadings and evidence in this case you will answer, 'Yes.'

"As to the third issue, if you find the lines of the defendants to be from I to 4, then the plaintiff cannot recover for any timber cut by defendants east of that—but only for the timber cut west of it. If you find plaintiffs are the owners only outside of the solid line then they will be entitled only to what timber you find the defendants have cut

between the outside dotted line and the solid line. Your answer to this issue write in dollars and cents."

The defendants excepted to the refusal of the Court to give instructions prayed for, and to the charge as given.

There was a verdict for the plaintiffs.

There was judgment "that the plaintiffs have and recover of the defendants all the lands described in the complaint west of a straight line running from the south-west corner of the May place to the south-east corner of the Chestnut Orchard tract, and that the defendants are the owners of the land described in the complaint east of a straight line running from the south-west corner of the May place to the south-east corner of the Chestnut Orchard tract; and that the plaintiffs, M. R. Kimsey and C. W. Slagle, make, execute and deliver to the defendants a deed in fee for all the land described in plaintiffs' complaint that lies east of a straight line running from the south-west corner of the May place to the south-east corner of the Chestnut Orchard tract."

*Messrs. Jones & Daniels*, for plaintiffs.
*Messrs. Kope Elias* and *T. F. Davidson*, for defendants.

MACRAE, J.: It will be seen that chapter 17 of *The Code*, in relation to entries and grants, does not apply to those of the plaintiffs, for the reason that the lands therein granted were a part of the land acquired by treaty from the Cherokee Indians and are governed by the provisions of what is known as the "Cherokee Land Law," chapter 11 of *The Code*, wherein a different mode of procedure is prescribed for the acquisition of land from the State previous to the 1st day of November, 1883, when by section 2478 the Cherokee lands were made subject to entry as other public lands.

The plaintiff claims title to that portion of the lands on the plat which is embraced in the dotted lines by virtue of entries made in 1855 and 1860 and grants issued to him as assignee on the 10th day of February, 1890.

The defendant Heighway claims the land embraced within the solid lines under an entry made by defendant Munday on the 21st day of December, 1889, a grant to said Munday, October 20, 1890, and a deed from Munday to Heighway, March 16, 1891.

By the claim of the plaintiff he has the senior entries and the senior grants. But the defendant contends that the entries of 1855 and 1860 had lapsed, and that all rights to grants thereunder had been abandoned and lost by long failure on the part of the enterers to take out grants, as, deducting the time between May 20, 1861, and January 1, 1870, when the statute of limitations did not run, there was a period of over twenty-six years between the laying of the entries and the taking out of the grants. Defendants deny that plaintiff is the owner and entitled to the possession of the land described in the complaint, that within the dotted lines, and admit the possession by defendants and deny that it is wrongful. Their further defences and the plaintiff's reply are set out in the statement of the case.

Defendant tendered eight issues covering the evidential questions rather than the issues proper, which should be submitted to the jury. His Honor declined to submit them, and submitted the usual issues in an action of ejectment. We think his Honor might have presented every pertinent inquiry to the jury under the three issues. It was a matter of discretion with him how they should be presented. The matter has been discussed so often of late that we forbear to quote authorities.

Under the general law regulating entries and grants the entry creates an equity, which, upon the payment of the

purchase-money to the State in due season, entitles the party to a grant, and consequently to a conveyance from another party who obtained a prior grant under a junior entry with knowledge of the first entry. *Plemmons* v. *Fore*, 2 Ired. Eq., 312, and cases cited; *Gilchrist* v. *Middleton*, 108 N. C., 705; *Bryan* v. *Hodges*, 107 N. C., 492.

Section 2766 of *The Code* prescribes the time within which the enterer shall pay for said land as on or before the 31st day of December which shall happen in the second year thereafter (viz., after the entry), or the entry shall become null and void and the land may be entered by others.

But the law regulating entries and grants of Cherokee lands before November 1, 1883, provides only such limitations of time within which the purchase-money shall be paid as will appear in the series of acts collected in chapter 11 of *The Code*, Vol. II. By section 2465 of *The Code*, Acts of 1852, ch. 119, it was provided at what prices the lands lying in Cherokee county should be sold, and by section 2466 the mode of payment therefor was prescribed as follows:

" It shall be lawful for all persons entering vacant lands in said county of Cherokee to file their bonds, with approved security, with the entry-taker, payable to the State in four equal annual installments, which shall when paid be in full of the purchase-money for the tract or tracts so entered, and upon proof of such payment as herein provided the Secretary of State shall issue the grant or grants according to the entry and survey thereon, and in case the land shall have been surveyed by authority of the State the grant shall issue according to the survey so made, and not otherwise, and no portion of any tract so surveyed shall be granted without the whole." And this section is made

applicable to lands in Macon and Haywood counties by section 2468.

By section 2477 of *The Code,* which is section 1 of chapter 22 of the Acts of 1854–'55, ratified February 15, 1855, shortly after the entries heretofore referred to as made in 1855, it was provided that "All persons who have, previous to February 15, 1855, entered any of the vacant lands in the counties of Cherokee, Macon, Jackson and Haywood, pursuant to an act of the General Assembly at its session of 1852–'53, chapter 119, entitled 'An act to bring into market the lands pledged for the completion of the Western Turnpike Road,' which have not yet been surveyed, and bonds filed for the purchase-money, according to said entry or entries, shall cause the same to be surveyed and file bonds for the same on or before the 1st day of May, 1856; and in case the said entry or entries be not surveyed, nor the entry-takers of said counties notified within the aforesaid time, that it is his intention to become the purchaser accordingly, then it shall be lawful for any other person, who has entered the same lands, to cause the same to be surveyed and to file his bonds for the same on or before the first day of July, 1866; and in case the person or persons who have heretofore entered any of the vacant lands aforesaid shall fail or neglect to comply strictly with this section according to its true meaning then it shall be lawful for any other person or persons to enter said lands, and be allowed three months to survey and file bonds for the same; and the said time of three months shall be allowed in any other instance from and after the date of said entry, unless otherwise provided for: *Provided,* and it is the true meaning of this section that the right to take the said lands in whatsoever manner entered heretofore or hereafter shall be regulated according to priority of entry."

And, so far as we are informed, there was no further legislation on the subject until the adoption of *The Code* of 1883, when section 2478 was inserted, opening said lands to entry as other public lands.

That the equity in the enterer to secure the title may lapse or be abandoned under the general law is evident; and as to the entries No. 8,059 and No. 8,060 on the plat there can be no question that a neglect for many years to comply with the requirements of the statute (section 2477) bars the right of the enterers to take out a grant under those entries.

As to the entry of tract No. 9,360 on the plat of the 16th of March, 1860, under the provisions of section 2466, quoted in full above, it was the duty of the enterer to file his bonds, with approved security, with the entry-taker of Macon county, payable to the State in four annual installments.

It could hardly have been intended by the law that as to those entries made after 1856 there should be no limit upon the enterer as to the time in which he was to perfect his right to a grant. Indeed, the requirement that he should give bonds, the last of which was to become due in four years after the entry, would indicate in strong terms the intention of the law that the land should be paid for in that time. If, however, he should be allowed a reasonable time after the maturity of the last bond to pay it and take out his grant, by all analogies twenty years would raise a presumption of abandonment.

In Pennsylvania it was held that "ordinarily abandonment involves a question of intention, and is for the jury on all the circumstances, but where it depends on *lapse of time*, and there are no repelling circumstances in proof, it becomes after seven years a conclusion of law to be declared by the Court." *Emery* v. *Spencer*, 23 Pa. St., 271.

The entries of 1855 are governed by the Act of 1854–'55, and had lapsed by failure to comply with that act. The entry of 1860 being governed by no express limitation of statute, it was the duty or privilege of the enterer to have paid his bonds and taken out his grant within a reasonable time. And without announcing any rule as to what length of time would be reasonable in every case, we have no hesitation in holding that the period between 15th March, 1860, and 10th February, 1890, deducting the period in which the statute of limitations did not run, was unreasonable for delay on the part of the plaintiff and his assignor, and that the defendant Munday might have entered the same land, even with notice of the previous entry, unaffected by any equity of the plaintiff under the old entries.

It is not to be understood, however, that the grants to the plaintiff upon the lapsed entries are void. "Because a grant is taken out upon an entry which has lapsed by the efflux of time it does not follow that it is void." *Wilson* v. *Land Company*, 77 N. C., 445. It was held in *Gilchrist* v. *Middleton, supra,* that where a grant was issued in 1847 under an entry made in 1801 the grant was not void on its face, but the enterer had a right to call for a grant even forty-six years afterwards, provided the purchase-money was paid to the State before the 31st of December of the second year after the entry was made.

We do not understand that the defendants undertake in this case to attack the plaintiffs' grants collaterally, for it is well settled that a grant can only be vacated by proceedings under the statute, sections 2786 and 2788 of *The Code. Crow* v. *Holland*, 4 Dev., 417. But as very fully pointed out in *Gilchrist* v. *Middleton, supra,* by Mr. Justice AVERY, where he cites many authorities: "Where controversies have originated in such conflicting claims it has sometimes happened that the grantee under the senior grant issued

on the junior entry brought an action of ejectment against the grantee in possession claiming under the junior grant and senior entry, and the latter, being unable to set up his equity as a defence in a court of law, filed a bill in a court of equity asking that the former be declared a trustee and ordered to convey the legal estate, and that pending the investigation of his claim for such relief the plaintiff in the action of ejectment should be enjoined from further proceeding. In other instances the junior grantee was evicted and subsequently filed his bill. If in such suit the plaintiff succeeded in proving that the defendant had either actual or constructive notice of the older entry when he took out his grant, and that the older entry covered the same land embraced in it, then the Court would declare the defendant a trustee for the plaintiff, and compel him to convey the legal title. But the burden was upon the claimant under the junior grant then, as it is now, to establish this fraud in a direct proceeding in which it must be distinctly alleged. *Currie* v. *Gibson,* 4 Jones' Eq., 25; *Monroe* v. *McCormick,* 6 Ired. Eq., 85; *Allen* v. *Gilreath, Ibid.,* 252."

Since the distinction between actions at law and suits in equity have been abolished the plaintiff may bring his action or the defendant his counter-claim, seeking this relief, in the one action under the Code of Civil Procedure. In our case the plaintiff seems to have the senior grant and the senior entry. The defendant, however, in his defence or counter-claim, sets up his equity alleging the lapse and abandonment of the senior entry, and other defences. But the defendant does not seek to vacate the first grant. His demand is that the plaintiff be declared a trustee for him, and required to make him a deed for all land embraced in plaintiff's grants, which is also covered by defendant's grant. His demand repels the position that plaintiff's

grants are void between these parties. It is founded on the very contrary position that they are not void, but that the grantee is a trustee for the claimant under the later entry, because the prior entry had lapsed and been abandoned. *Featherstone* v. *Mills*, 4 Dev., 596. The plaintiff cannot claim under his entries of 1890, because the grants recite the older entries and are issued in pursuance of them. It has been held that even though the claimant, the subsequent enterer, had notice of the lapsed entries when he made his own, it would not revive the lapsed entries. "The law does not forbid a person from entering land previously entered by another." The second entry is made subject to the engagement of the State to make a grant to the first enterer, provided he pays the price before or at the day limited by law. *Stanly* v. *Biddle*, 4 Jones' Eq., 383.

It being determined that his Honor should have instructed the jury that upon the evidence the plaintiff's entries of 1855 and 1860 had lapsed, and that he could not fall back upon his entry of January 27, 1890, the question of priority of survey, as to which there was much testimony going to show that plaintiff's survey was made prior to that of defendant, can be of no moment, for as between plaintiff and defendants the prior survey and grant upon lapsed entries cannot give the plaintiff the advantage, neither would the vagueness of defendant's entry if it were not sufficiently definite to give notice of all the land claimed by defendants, for this was cured by defendant's survey and grant, which covered all the land within the solid lines. *Harris* v. *Ewing*, 1 Dev. & Bat. Eq., 369; *Johnson* v. *Shelton*, 4 Ired. Eq., 85; *Monroe* v. *McCormick*, *supra*.

It was error in his Honor to instruct the jury that if A. P. Munday did not give notice to Kimsey and Slagle that his entry was there and covered the land claimed by defendant that the defendant's line would be established

from I to 4.   He ought to have instructed them upon the evidence that defendant was entitled to all the land within the solid lines.

But as it was admitted that the lands represented on the plat by the solid lines A, B, C, D, E, F, G, H, I, J, K and L are covered by the defendant's grant, and that the lands represented by the dotted lines are covered by the grants of the plaintiff, and that the May place and Chestnut Orchard are not in dispute, and as it appeared that the defendants admitted possession of all the lands claimed by plaintiffs and a portion of said lands was not embraced within the solid lines, the plaintiffs were entitled to recover such part from defendants, and defendants were entitled to a conveyance from plaintiffs of all that part of the land embraced within the solid lines which was covered by plaintiff's grants.                                     New Trial.

Error.