JOHN A. DEW et al. v. W. H. PYKE et al.

(Filed 30 October, 1907).

**State's Lands—Entry—Registration—Enabling Act—Grants.**

The registration of a grant of land from the State is not necessary to give it validity for the purpose of title. Chapter 40, Acts of 1893, provided that grants which had theretofore been issued, but not registered within the time required by law, might at any time be registered within two years after 1 January, 1894, "notwithstanding the fact that such specified time had already expired, and all such grants heretofore registered after the expiration of such specified time shall be taken as if they had been registered within such specified time"; therefore, a grant issued prior to the said enactment, but registered at a time when there was no provision therefor, is made valid by the provisions of said act as against a subsequent grant duly registered, the latter having been issued and registered at a time when the grant first issued could have been registered under the law.

CIVIL ACTION, heard before *Webb, J.,* and a jury, at March Term, 1907, of the Superior Court of BRUNSWICK County.

*C. Ed. Taylor* and *Lewis & Schulken* for plaintiffs.
*E. K. Bryan* and *Cranmer & Davis* for defendants.

WALKER, J. This is an action for the possession of land. The Court intimated an opinion against the plaintiffs. They thereupon submitted to a nonsuit, and appealed.

The State granted the land to Lewis Jones, 25 October, 1852. This grant was not registered until 1888, at a time when there was no law permitting the registration of it. On 17 December, 1880, a grant for the same land was issued to Alexander Cox, and legally registered 28 January, 1881. The plaintiffs assert title to the land under the grant to Cox, and the defendants under the Jones-Alexander grant; so that the question is, Which of these two grants should prevail? By Acts of 1893, ch. 40, it was provided that grants which had theretofore been issued, but had not been registered within the time required by law, might be registered at any time within two years after 1 January, 1894, "notwithstanding the fact that such specified time had already expired, and all such grants heretofore registered after the expiration of such specified time shall be taken as if they had been registered within such specified time: *Provided,* that nothing herein contained shall be held or have the effect to divest any rights, titles or equities in or to the land covered by such grants, or any of them, acquired by any person or persons from the State of North Carolina, by or through any entry or entries, grant or grants, made or issued since such grants were respectively issued, or of those claiming through or under such subsequent entry or entries, grant or grants." This case is governed by *Janney v. Blackwell,* 138 N. C., 437. In both cases the junior grants were registered within the prescribed time, for, while in the *Janney case* the junior grant was registered more than two years after it was issued, the act of 1876-'77, ch. 23, extended the time of registration, and it was registered within the extended period. In this case the junior grant was registered within two years from the date it was issued. There is, though, this one difference between the two cases, which is, that the senior grant in the *Janney case* was registered at a time when its registration was authorized—that is, by the act of 1893, to which we have already referred, it having been registered 5 April, 1895—while in this case the senior

grant, which was issued to Jones, was registered in 1888, or at a time when there was no law authorizing its registration, the Legislature having failed from 1885 to 1893 to pass any act extending the time for the registration of grants. But that very act of 1893 validated the registration of all grants which had been registered after the time for registration had expired, except as to "rights, titles or equities" acquired in the land from the State since the issuing of the senior grant, or, in other words, any intervening "rights, titles or equities." While the two cases, therefore, differ in the respect indicated, they do not differ in principle, because it is clearly and distinctly held in *Janney v. Blackwell* that the junior grantee had acquired no such "right, title or equity" as was intended by the act of 1893 to have the effect of defeating the title of the senior grantee, and, indeed, no "right, title or equity" at all, as, at the time the junior grant was issued, the land was not the subject of entry, the State having by the senior grant parted with all the title she had originally in the land. The language of the Court in that case, as used by *Justice Connor* in this connection, is significant, and completely overthrows the plaintiffs' contention in the case at bar. "It is not to be doubted," says he for the Court, "that the Legislature had the power to impose upon the persons registering their grants after the time provided therefor had expired the condition that they should do so, subject to junior grants which had been registered. The registration of a grant is not necessary to give it validity for the purpose of passing title," citing 24 Am. and Eng. Enc. of Law (2d Ed.), 116, which fully sustains the proposition, if it required any authority to sustain it. The distinction between deeds and grants, in this respect, is obvious, when we carefully read the statutes applying to them, respectively. In the case of a deed it is provided that it shall not be valid unless registered, as against creditors or purchasers for a valuable consideration from the bargainor, and then only from the registration thereof (Acts of 1885, ch.

DEW *v.* PYKE.

147; Code, sec. 1245; Revisal, sec. 980), while in the case of a grant it is simply required that the grantee shall cause it to be registered in the proper county within two years after it is issued. Rev. Code, ch. 42, sec. 22; Code, sec. 2779; Revisal, sec. 1729. Why this radical difference in the phraseology of the two statutes, if it was intended that there should be no distinction between the two kinds of instruments with reference to the effect of registration upon their validity? It is perfectly evident that the two enactments were expressed in different words designedly, and with the purpose that they should have separate and distinct meanings and receive different constructions. If it was the purpose to provide that grants should be void if not registered within two years after they are issued, why not declare that intention in unmistakable language, as was done in the case of deeds? We also find that in the case of contracts to convey land, and leases of land for more than three years (Revisal, sec. 980), mortgages and deeds of trust (Revisal, sec. 982), marriage settlements (Revisal, sec. 985) and some other instruments, the intention that they shall be void if not duly registered is clearly expressed; and in the case of deeds of gift the difference is striking, and demonstrates to a certainty, we think, what was meant by the different phraseology. It is provided that a deed of gift shall be proved and registered within two years after its execution. So far the statute is like that in the case of grants. But the Legislature did not think this language sufficient to invalidate the deed of gift if the provision as to registration was not complied with by the donee, so it took the precaution to add that if the deed is not registered within two years it shall be void, "and shall be good against creditors, and purchasers for value, only from the time of registration." If the requirement that the deed of gift should be registered within two years after its execution was intended as a condition, noncompliance with which should invalidate it, why superadd the words "or otherwise (it) shall be void"? Revisal, sec. 986.

This may be considered as a legislative construction of the words "shall be registered within two years after its execution," to the effect that if the instrument is not so registered it shall not be evidence, unless the time for registration is extended and a new authority to register it is thereby given. The English Statute of Enrollments (27 Hen. VIII., ch. 16) provided that no manors, lands, etc., shall pass from one to another, whereby an estate of inheritance or freehold shall be made to take effect, unless the deed of bargain and sale be enrolled within six months after the date of the writing indented. It was resolved that no estate passed until the enrollment of the deed. *Dymnock's case,* Cro. Jac., 408; *Iseham v. Morrice,* Cro. Car., 110; *Flower v. Baldwin,* Cro. Car., 217. But it will be observed that the enrollment is annexed as a condition to the passing of the title, as in the case under our statutes of mortgages, deeds of gift and the other instruments above enumerated. This is all very significant, and plainly evinces, what we have confidently asserted to have been the intention, that the material difference in language should produce a marked unlikeness in meaning, and what difference could there be in the sense of the two statutes other than that, in the one case a failure to register the instrument within the specified time should invalidate it, and in the other it should not? This reasoning is supported by the view of the law manifestly entertained by *Judge Ruffin* (afterwards Chief Justice) in *Jones v. Sasser,* 14 N. C., 378, for he recognizes the existence of the very distinction we have made between the act which there declared that gifts of slaves should not be good and available unless registered within one year after their execution, and the general statute merely requiring registration within a given time of other instruments.

Passing to another view of the case, it is a mistake to suppose that no legal title passes from the State to its grantee by virtue of a grant until it is registered. The entry gives an equity or inchoate right to call for a grant, which may be

divested by a subsequent entry laid and grant issued thereon before the grant based on the first entry is taken out, if the senior grantee had no notice of the first entry. *Gilchrist v. Middleton,* 107 N. C., 678; *Kimsey v. Munday,* 112 N. C., 816. But when the grant issues upon the first entry, the title passes out of the State, and the land is no longer subject to entry. *Hoover v. Thomas,* 61 N. C., 184; *Gilchrist v. Middleton,* 108 N. C., 705; *Rowe v. Lumber Co.,* 129 N. C., 97; *Stewart v. Keener,* 131 N. C., 486; *Berry v. Lumber Co.,* 141 N. C., 386; *Janney v. Blackwell, supra.* It was contended in *Ray v. Wilcoxson,* 107 N. C., 523, that an unrecorded deed confers no estate, and that it is no more than a mere executory contract. With reference to this contention, *Shepherd, J.,* for the Court, said in reply, and with great force, following former decisions of this Court, that it was a misconception of the law, for it is well established that such a deed is "a legal conveyance," and, although it cannot be given in evidence until it be registered, and, therefore, it does not pass a present legal title, it has, as a deed, an operation from its delivery. It may be set up in equity, whether voluntary or for value, and by it such an estate is conferred as may be sold under execution, and this even before the act of 1812. Its owner is a tenant of the freehold, and a recovery under a *precipe* against him would be good, and his widow may be endowed in the same. Such a grantee is also deemed in equity to be seized of an equitable freehold. *Price v. Sykes,* 8 N. C., 87; *Morris v. Ford,* 17 N. C., 412; *Walker v. Coltraine,* 41 N. C., 79; *Phifer v. Barnhart,* 88 N. C., 333; *Austin v. King,* 91 N. C., 286; *Arrington v. Arrington,* 114 N. C., 151. A grant bears a close resemblance, in some of the respects above indicated, to a deed, and certainly to the extent, as said in *Janney v. Blackwell,* of not requiring registration to give it validity. Registration is, indeed, necessary to make it evidence of the title which the State has granted, but does not constitute an essential part of the title itself.

There is still another view of this case which is fatal to the plaintiffs' contention. At the time the Cox grant was issued, and also at the time it was registered, on 28 January, 1881, and for some time afterwards, extending acts had been passed, under which the senior grant issued to Lewis Jones in 1852 could have been registered. Acts 1876-'77, ch. 23; Acts 1879, ch. 220; Acts 1881, ch. 313. Why was the grant to Jones not valid at the time the Cox entry was made and the grant issued thereon was registered? Surely, at that time—that is, in 1880 and 1881—the land was not the subject of entry, and the Cox grant was therefore void, the State having already parted with its title. In *Berry v. Lumber Co.,* 141 N. C., 393, we said: "The Houck and Berry grants were both ineffectual to pass title to any land covered by the Cathcart grant, as, the latter being of older date, the State had no title to that land at the time the junior grants were issued, and the lands were therefore not subject to entry and grant. The State could not grant that which it did not itself have, and, therefore, where there are two or more conflicting titles derived from the State, the elder shall be preferred, upon the familiar maxim that he who is prior in time shall be prior in right, and shall be adjudged to have the better title." See, also, *Janney v. Blackwell, supra.*

We are not at all disposed to overrule *Janney v. Blackwell,* or even to modify the ruling of the Court therein, for, upon a careful re-examination of the question presented in that case, we are now convinced (in view of past and of existing legislation upon the subject, showing what the true policy of the State is) that *Janney v. Blackwell* was correctly decided. Nor need we attempt to show that there is no essential difference between that case and this one, arising out of the fact that in *Janney v. Blackwell* the senior grant was registered at a time when its registration was authorized, while the grant to Jones was registered when there was no law authorizing its registration, and must, therefore, depend for its validity upon the

retrospective clause in the act of 1893, making good all prior unauthorized registrations of grants, for that is, upon the facts of this case, clearly a distinction without a difference, the crucial question being whether Cox acquired a good title by his grant, and *Janney v. Blackwell* decides that he did not, and if he did not, there was no one to be injured by the validating provision of the act of 1893, so far as appears in this case. There was no vested right or title to be affected by the retroactive legislation, even if it was not in itself valid. The fallacy of the plaintiffs' argument consists in the fact that their premise is incorrect, namely, that registration of a grant is required to vest the title.

We need not discuss the interesting question raised in the learned and exceedingly well-prepared brief of Mr. Taylor as to the intervention of an equity or right in the plaintiffs, arising from the issuing and registration of the Cox grant before the Jones grant was recorded, under *Scales v. Fewell,* 10 N. C., 18; *Isler v. Foy,* 66 N. C., 547, and that class of cases, as we have shown that he had no such right or equity.

The plaintiffs having admitted that they cannot succeed in this case upon the facts, unless the Cox grant is valid as against the Jones grant, it follows from what we have said that there is no error in the ruling of the court, and the nonsuit must stand.

No Error.